THE WILLIAMS MOWER & REAPER COMPANY VS. RAYNOR.

BAILEE OR AGENT: CONVERSION: ARREST.   (1, 4, 5) *Liability of bailee or agent to arrest in action for conversion of goods or fraudulent misapplication of proceeds.*

CONTRACT.   (2, 3) *Contract construed: Purchaser or agent?*

1. A commission merchant who sells goods for his consignors, even though he guaranty the payment of the price, receives the proceeds of the sales in a *fiduciary* capacity, and is liable to arrest in an action therefor, unless he has been authorized by his consignor to use such proceeds in his own business.

2. By the terms of a contract between the parties to this action, defendant expressly agreed to *act as the agent* of plaintiff for the sale of reapers and mowers; to keep all machines delivered to him under the contract properly stored and covered; to give special assistance to each purchaser in setting up and starting his machine; not to deliver a machine until it was fully paid for; to pay the stipulated price in creditable farmers' notes, in a prescribed form, *taken for the machines*, and *pro rata* in cash *taken therefor;* to sell extra parts for cash only; to keep accurate and separate accounts of all transactions pertaining to plaintiff's business, and exhibit the same to plaintiff whenever required; and to render to plaintiff, by a certain day, a statement of all sales of machines and extra parts, with full payment of any balance that might remain due to plaintiff "in the proportion of the cash and notes therein agreed." The contract also restricted defendant as to the time of credit he might give on sales, and required him to take notes for machines sold on credit, payable to plaintiff's order, with an agreement to be signed by the maker of each note that the title to

The Williams Mower & Reaper Company vs. Raynor.

and ownership of the machine for which the note was given should *remain in the plaintiff* until the note should be paid. *Held*, that this must be construed as a contract under which defendant received and sold the machines as *agent* for the plaintiff; and this construction will not be prevented by a provision requiring defendant to guaranty the collection of all notes taken for machines, nor by the absence of any provision limiting the prices at which the machines might be sold, or fixing defendant's commission, nor by the fact that the machines sent to defendant were invoiced to him as "bought" of the plaintiff.

3. The construction here put upon the contract is strengthened by certain provisions therein by virtue of which plaintiff had its *option*, in respect to machines remaining in defendant's hands unsold at the end of the season, to require defendant to give his note for the stipulated price thereof, or allow them to lie over in his hands until the next season subject to the same contract.

4. Defendant, having been the mere agent, bailee or factor of plaintiff, to sell said machines, was liable to arrest in an action against him for a conversion of some of them, and for a fraudulent misapplication of the proceeds thereof, or for both. R. S., ch. 127, sec. 2 (Tay. Stats., 1452, § 2).

5. The action was commenced by service of a summons for relief, without complaint, and defendant was arrested and held to bail upon an affidavit of plaintiff's agent; and subsequently, after hearing affidavits for both parties, showing the contract between them, the failure of the defendant to pay over the proceeds of sales made by him under it, etc., the court refused to vacate the order of arrest. *Held*, no error.

APPEAL from the County Court of *Milwaukee* County.

The plaintiff having commenced an action against the defendant in the Milwaukee county court, by the service of a summons for relief without complaint, presented to the judge of that court the affidavit of its agent, one Matteson, and procured from said judge an order for the arrest and holding to bail of the defendant, by virtue of which order the defendant was arrested. The latter thereupon moved the county court, on his own affidavit, to vacate the order of arrest. On the hearing of the motion, the affidavit on which such order was made, and two additional affidavits of Matteson, were read in opposition thereto.

The affidavit upon which the order of arrest was made, is as follows:

" M. V. Matteson, being duly sworn, deposes and says that he is the agent in the above entitled cause, and makes this affidavit for and on behalf of said plaintiff. And deponent says that a summons has been duly issued in the above entitled cause and duly served upon said defendant. And deponent further says that the said defendant was duly appointed the agent of the said plaintiff under and by virtue the following contract:

" ' ARTICLES OF AGREEMENT for the season of 1874, entered into this 31st day of January, 1874, by and between the *Williams Mower & Reaper Company*, of the city of Syracuse, state of New York, as the first party, and *W. C. Raynor*, of the city of Milwaukee, state of Wisconsin, as the second party — *Witnesseth :*

" ' 1st. The second party hereby agrees to act as agent of the first party, for the sale of 'The Williams Changeable Speed Combined Selfraking Reaper and Mower,' 'The Williams Dropper,' and 'The Williams Single Mower,' in the following territory : the counties of Marathon, Shawano, Door, Kewaunee, Brown, Outagamie, Waupaca, Pórtage, Wood, Manitowoc, Calumet, Winnebago, Waushara, Sheboygan, Fond du Lac, Green Lake, Marquette, Adams, Sauk, Richland, Crawford, Grant, Iowa, La Fayette, Green, Dane, Rock, Dodge, Columbia and Washington, excepting the towns of Germantown and Jackson ; and to guaranty the sale for the harvest of 1874, in the territory named above, of at least thirty-six of said Combined Selfrakers No. 1, and forty-eight of the No. 2,— of said Droppers No. 1,— Nos. 2 and 5 ; three Droppers and five of said Single Mowers to be hereafter shipped him by the first party, as per his shipping directions.

" ' 2d. Also to thoroughly canvass said territory, and order from time to time such further number of machines as he shall find sales for, guarantying the sale of all machines so ordered ;

the first party to fill the orders so far as their supply will allow; and any of the machines so ordered remaining on hand unsold at the close of the harvest, to be settled for by note of the second party, due December 1, 1875, or a continuation of this contract until the same are disposed of and paid for, at the option of the first party — in either case to draw interest at ten per cent. per annum from July 1, 1874, instead of farmers' notes, as hereinafter provided.

"'3d. The second party agrees to keep properly stored under cover all machines in his care, and pay all freight and charges on the same.

"'4th. The second party agrees to give special assistance, either in person or by competent agent, to each purchaser, to set up and start the machine, and will not deliver a machine until fully settled for.

"'5th. The second party guaranties that all the Combined Selfrakers shall net as follows: No. 1, one hundred and seventy dollars; No. 2, one hundred and fifty-five dollars; Droppers No. 1, one hundred and fifty dollars; No. 2, one hundred and thirty-five dollars each, to the first party at their works in Syracuse, New York, in creditable farmers' notes, taken for said machines, to be due and payable at least one-half on or before December 1, 1874, and not exceeding one-half December 1, 1875, with interest at ten per cent. per annum, from July 1, 1874, and the Single Mowers eighty-five dollars each, to the first party at their works in Syracuse, New York, in creditable farmers' notes and *pro rata* cash, taken for said machines, to be due and payable on or before December 1, 1874, with interest at ten per cent. per annum from July 1, 1874; and on all machines sold and paid for in cash on or before October 1, 1874, and promptly remitted for as received, the first party is to allow a discount of ten dollars on each Selfraker or Dropper, and five dollars on each Single Mower so sold and remitted for. In every sale where notes are taken, the blank forms furnished by

the first party to be used, payable to their order, fully filled out, and to guaranty the collection of each of said notes.

"'6th. The second party agrees to collect notes when returned to him for that purpose, and to obtain security for the same if required by the first party, at his own expense.

"'8th. The second party argrees to receive and pay freight on all extra·parts ordered by him, to keep them under cover, to sell the same for cash only, and is to be paid by the first party out of the proceeds of extra parts sold and paid for, 35 per cent.

"'9th. The second party agrees to keep a true and accurate account of all transactions pertaining to the business of the first party; will in no case allow the same to be mixed up with his other business; and will at any time and all times when requir- ed by first party, exhibit said accounts for inspection.

"'10th. The first party warrant their machines to be well made, of good material and well finished, to mow, reap and deliver the grain as well as any machine made for the same purpose.

"'11th. The second party agrees to render a full statement on blank forms furnished by first party, of all sales of machines and extra parts, on or before the first day of October, 1874, with full payment of any balance that may remain due to the first party, in proportion of cash and notes therein agreed.

"'It is understood that W. C. Raynor has a store right in common with S. Bush & Co., in Milwaukee.

"'It is understood if this contract is carried out fully·and faithfully on the part of W. C. Raynor, a reduction of five dol- · lars is to be made upon each machine at the time of settlement.

"'For exceptional cases, when necessary to make a sale, seven per cent. interest will be allowed, instead of ten, as named in the contract.

"'In witness whereof we have hereunto set our hands the day and year above written. W. C. RAYNOR.'

" And deponent further says that the said defendant entered upon his duties under the said contract, and the said plaintiff delivered to the said defendant, to be sold under the said contract, a large number of machines specified in the said contract; and deponent says that said defendant has sold and converted to his own use machines of said plaintiff to an amount exceeding twelve thousand dollars.

"And deponent further says that said defendant as the agent of said plaintiff has sold divers of said machines in said contract on credit, without taking notes therefor on the blanks furnished by the company for that purpose, and in other instances has taken notes on such sale and has sold or pledged the said notes so taken for his own use, and has neglected and refused, although requested so to do, to pay to said plaintiff the said money or any part of it. And deponent says that by reason of the said wrongful conversion of said property of said plaintiff, it, the said plaintiff, has sustained damages to at least the said sum of twelve thousand dollars, and further deponent saith not.                    M. V. MATTESON.

"Subscribed and sworn to before me this 28th day of December, A. D., 1874.          J. E. MANN, *County Judge.*"

In his affidavit upon which the motion to vacate was founded, the defendant does not deny that he is largely in arrears to the plaintiff on account of machines delivered to him pursuant to the contract between them, but avers that he was the purchaser and owner of such machines, and not merely the agent or bailee for the sale thereof; and certain facts are stated there in, which he claims sustain his interpretation of the contract. The most material of these facts are, that in 1872 and 1873 he transacted business with the plaintiff under very similar contracts; that all machines sent by plaintiff to defendant or his agents after January 1, 1872, were billed or invoiced to him in the following form: · " *W. C. Raynor*, Milwaukee, Wis. Bought of the *Williams Mower and Reaper Co.,*" etc., each bill containing a description of the machines forwarded, and the

contract price therefor; and that the price of the machines thus invoiced amounted to $90,000. The balance of the defendant's affidavit consists mainly of excuses for, or a statement of the causes of, his failure to pay over or deliver to the plaintiff the proceeds of the machines received by him under the contract.

To one of the affidavits of Matteson there is annexed the form of the notes mentioned in paragraph 6 of the contract. It is made payable to the order of the plaintiff, and contains the statement that it was given for one of the machines mentioned in the contract; and it is accompanied by an agreement and warrant of attorney, to be executed under seal by the maker of the note, the material part of which agreement is in substance as follows: "The sale and purchase of said Williams Reaper and Mower, the property for which the above note is given, are upon the express conditions that the title and ownership of said property shall remain in the said *Williams Reaper and Mower Co.*, and shall not pass to the said A. B. [*the maker of the note*], or to any one by or through him, until the above note and interest are paid in full, and the delivery thereof at this time is subject to the same conditions; the said *Williams Reaper and Mower Co.* shall in the meantime have the right to take possession of said property, wherever it may be found, at any-time it shall deem itself insecure, even before the maturity of said note."

The court made an order denying the motion to vacate the order of arrest; and the defendant appealed.

*Hauser & Coleman*, with *Jenkins, Elliott & Winkler* of counsel, for appellants:

1. The contract constitutes a *sale* of the machines, and not a *bailment* of them, either under a *del credere* commission or other-wise. "When the identical thing delivered, although in an altered form, is to be restored, the contract is one of bailment, and the title to the property is not changed; but when there is no obligation to restore the specific article, and the receiver is at liberty to return another thing of equal value, he becomes

a debtor to make the return, and the title to the property is changed; it is a sale." *Mallory v. Willis*, 4 Coms., 76; Hilliard on Sales, ch. 1; 2 Kent's Com., 590; Benjamin on Sales, § 2, note (i); Story on Bailm., § 47; *Wilson v. Finney*, 13 Johns., 358; *Marsh v. Wickham*, 14 id., 167; *Smith v. Clark*, 21 Wend., 83; *Carpenter v. Griffin*, 9 Paige, 310; *Hurd v. West*, 7 Cow., 752; *Baker v. Woodruff*, 2 Barb., 520; *McArthur v. Wilder*, 3 id., 66; *Norton v. Woodruff*, 2 Coms., 153; *Buffum v. Merry*, 3 Mason, 478; *Carlisle v. Wallace*, 12 Ind., 252; *Hollingsworth v. Bates*, 3 Blackf., 340; *Ewing v. French*, 1 id., 353; *Jenkins v. Eichelberger*, 4 Watts, 121, and note; *Lonergan v. Stewart*, 55 Ill., 44. 2. The contract does not constitute a *del credere* commission. In such case the title remains in the consignor, *and the property is at his risk;* the factor receives a commission for his services in selling, and an' additional compensation on commission for guarantying the sales. Story on Agency, § 33; Story on Bailm., § 455; *Marsh v. Wickham*, 14 Johns., 167; *The So. Australian Ins. Co. v. Randell*, L. R., 3 P. C. Cas., 101; *Ex parte White, In re Nevill*, L. R., 6 Ch. App., 397; *Chamberlain v. Dickey*, 31 Wis., 71. 3. The provisions of the contract to the effect that the appellant should pay for all machines ordered, whether sold by him or not; that there could be no restoration of the property by the appellant; that the respondent was to receive from the appellant certain specified prices, in all cases to bear ten per cent. interest from July 1st, *irrespective of time of sale or prices obtained;* that the property was at the risk of the appellant; and that the machines were to be warranted by the respondent to the appellant, — are all inconsistent with any bailment; and these provisions, as well as the course of dealing of the parties, show a sale, and not a bailment. *Eldridge v. Benson*, 7 Cush., 484; 6 Ch. App. Cas., 399, 110; 3 P. C. Cas., 108, 112; *Chamberlain v. Dickey*, 31 Wis., 71. 4. The whole conduct of the parties indicates the ordinary relation of debtor and creditor. Commission merchants who sell goods for their consignors, and guaranty

the payment of the prices, do not receive the proceeds of sales made by them in a fiduciary capacity, and are not liable to arrest in an action for such proceeds. *Goodrich v. Dunbar*, 17 Barb., 644; *Angus v. Dunscomb*, 8 How. Pr., 14; *Bussing v. Thompson*, 15 id., 97; *Duguid v. Edwards*, 32 id., 254; *McBurney v. Martin*, 6 Rob., 502; *Sutton v. De Camp*, 4 Abb., N. S., 483.

*Finches, Lynde & Miller*, for respondent:

1. The statute authorizes an arrest when property is converted or fraudulently misapplied by an agent of a corporation. Subd. 2, sec. 2, ch. 127, R. S.  2. The affidavit upon which the order of arrest was granted, clearly brings the appellant within the statute.  He was an "agent" of the company, and as such "agent" converted its property to his own use.  3. The affidavit clearly shows a wrongful conversion of property within the intent of subd. 1, sec. 2, ch. 127, R. S.  4. An *unauthorized* sale of property is a conversion of the property. *Cotton v. Sharpstein*, 14 Wis., 231.  5. The machines sent under the contract were a *consignment*, and not a sale. *Walker v. Butterick*, 105 Mass., 237; *Meldrum v. Snow*, 9 Pick., 444; *Reed v. Upton*, 10 id., 523.

LYON, J.  Although the affidavits upon which the motion to vacate the order of arrest was made and resisted, contain averments of many facts collateral to the contract of the parties set out in the affidavit of Matteson, upon which the order of arrest was made, yet the determination of the question whether that order was properly made depends entirely upon the construction of such contract.  If the defendant was merely the agent, bailee or factor of the plaintiff to sell the machines named in the contract, the title thereto remaining in the plaintiff until a sale thereof by the defendant, then it satisfactorily appears by the motion papers that there has been a conversion by the defendant of some of the machines delivered to him under the contract, or a fraudulent misapplication by him of

the proceeds thereof, or both, and the order of arrest was properly made. R. S., chap. 127, sec. 2 (Tay. Stats., 1452, § 2). But if the contract is one of sale — that is to say, if the defendant was the owner of the machines delivered to him under the contract,— there could not have been a conversion of them, or any fraudulent misapplication of such proceeds, by the defendant. If he failed to pay for the machines, the price in such case became a debt, to be recovered by the plaintiff in an action *ex contractu*, in which action no order of arrest can lawfully be made.

We are required, therefore, to determine whether the defendant was merely the agent or bailee of the plaintiff to sell the machines delivered to him under the contract, the title thereto remaining in the plaintiff, or whether the defendant was the purchaser and owner of such machines. The question of the true construction of the contract is not free from difficulty; for there are provisions in the instrument which seem to support either of the above hypotheses. Many cases were cited in the argument, in which the courts have given construction to contracts containing provisions similar to some of the provisions of the contract before us. In some of those cases the instruments were held to be contracts of sale; in others they were held to be mere contracts of agency, or bailments to sell. But in all of them the controlling question was, as it is in this case, What was the intention of the parties? Such intention is to be ascertained, if possible, from the terms of the instrument.

After very careful consideration of all the provisions of the contract under consideration, we have reached the conclusion that the defendant was the agent or factor of the plaintiff to sell the machines, and that the title thereto did not vest in the defendant. In other words, we conclude that the defendant held the machines, and the proceeds of the sales thereof, in a fiduciary capacity; and, the motion papers showing that he had converted or fraudulently misapplied the same, the order of arrest was properly made.

The defendant expressly agreed to act as the agent of the plaintiff for the sale of the machines; to keep all machines delivered to him, under the contract, properly stored and covered; to give special assistance to each purchaser to set up and start his machine; not to deliver a machine until it was fully settled for; to pay the stipulated price in creditable farmers' notes, in a prescribed form, *taken for the machines*, and, *pro rata*, in cash *taken therefor*; to sell extra parts for cash only; to keep true, accurate and separate accounts of all transactions pertaining to the business of the plaintiff, and to exhibit the same to the plaintiff whenever required; and to render to the plaintiff, by a certain day, a statement of all sales of machines and extra parts, with full payment of any balance that might remain due to the plaintiff, "in the proportion of cash and notes therein agreed." The contract also restricted the defendant as to the time of credit he might give on sales, and required him to take notes for machines sold on credit, payable to the order of the plaintiff, with an agreement, to be signed by the maker of each note, that the title to and ownership of the machine for which the note was given should *remain* in the plaintiff until the note should be paid.

We are unable to construe a contract containing the above provisions, to be a contract of sale. It does not profess to be a contract of sale; on the contrary, by its express terms, the defendant agrees to act as agent of the plaintiff for the sale of the machines within certain specified territory. The restriction of the defendant as to the length of credit he might give, and, what is perhaps more significant, the provisions that the proceeds of sales, to the extent of the stipulated prices, whether cash or notes, should be paid and delivered over to the plaintiff, and that each purchaser on credit should be required to give his note payable to the order of the plaintiff, and to covenant that the title to the machine so purchased should *remain* in the plaintiff until paid for, all strongly, almost unmistakably, indicate that an agency or bailment to sell, and not a sale, was

intended by the parties. To the same effect is the provision by which the defendant guarantied the sale of all machines ordered by him. If he was the absolute purchaser and owner of all machines delivered to him under the contract, the reason for inserting this provision is not apparent.

The construction we give to this contract is strengthened by the provisions in the second paragraph relating to machines not sold during the season of 1874. At its option the plaintiff could have required the defendant to give his note for the stipulated price of the unsold machines, or could have allowed them to lie over in his hands until the next season, subject to the same contract. This, we think, was an option to compel the defendant to purchase such machines absolutely, or to retain them as an agent or bailee to sell. The provision seems inconsistent with the theory that the title thereto passed to the defendant in the first instance.

On the other hand, it is assumed by the learned counsel for the defendant that from the time the machines were delivered to the defendant they were absolutely at his risk, and hence the title thereto must have been in him. This is unsatisfactory reasoning. If they were at his risk, it was because he was the owner. If not the owner, then, unless he made himself liable as an insurer, the risk was with the plaintiff, and, had the machines been destroyed or injured while in the hands of the defendant, without his fault, the loss would have fallen upon the plaintiff.

It is also claimed that the provision which requires the defendant to guaranty the collection of all notes taken for machines, is an indication that a sale and not a bailment was intended by the parties. But this is merely what is known as a *del credere* agreement, quite usual between principals and factors, and which in no manner affects the title of the property to which it relates, or the fiduciary relation of the factor to his principal.

It is further claimed that the absence from the contract of

any provisions limiting the prices at which the machines might be sold, or fixing the defendant's commissions, and the fact that they were billed or invoiced to the defendant as "*bought*" of the plaintiff, show that a sale, and not a mere agency to sell, was contemplated by the parties. Conceding, for the sake of the argument, that these omissions from the contract, and the form of the invoices, tend to support the defendant's theory, and conceding also that there are provisions in the contract which tend in the same direction, we think that the effect of the provisions which tend to sustain the opposite view is not overcome thereby, but that it is a contract by which the defendant agreed to act as agent in certain counties, and under certain restrictions, to sell machines for the plaintiff, and to pay over to the plaintiff the money and notes received by him on such sales, to the stipulated amount, the plaintiff remaining the owner of the property until sold by the defendant.

The numerous cases cited by counsel for the defendant to sustain his positions have been carefully examined. It will serve no useful purpose to comment upon them at length. Each of them depends upon its own facts, and each differs from this case in material particulars. It is believed that none of them are in conflict with the views above expressed. Those cases which are cited to the proposition that "commission merchants who sell goods for their consignors and guaranty the payment of the price, do not receive the proceeds of the sales made by them in a fiduciary capacity, and are not liable to arrest in an action for such proceeds," fail to sustain it, with the single exception of *Duquid v. Edwards*, 32 How., 254. That was a special term decision, and, on appeal to the general term, was reversed. *Same Case*, 50 Barb., 288. The doctrine established by the cases is, that the above proposition is only correct when applied to a case where the consignee or factor is authorized by the consignor to use the proceeds of the sales in his own business. This is not such a case.

*By the Court.* — The order of the county court, refusing to vacate the order of arrest, is affirmed.