## LOUIS A. LENZ

### v.

### WILLIAM HARRISON.

*Filed at Ottawa November 29, 1893.*

1. BAILMENT OR SALE—*goods consigned to agent to sell.* A manufacturer appointed H. as his agent to sell his wagons, and H. accepted the agency, and agreed to pay all freight and other charges and expenses, and not to sell on credit to any one except of undoubted solvency, the notes taken to be made payable to the principal in twelve months, and bearing seven per cent interest. H. was to indorse all notes, guaranteeing their prompt payment, and to transmit promptly all cash received and notes taken. For all wagons not sold within a year he was to give his note, on four months' time. H. was to have all the proceeds of sales above the invoice price, in full for his commissions: *Held,* that the transaction constituted a bailment, and not a mortgage or conditional sale, and that the wagons consigned under the contract were not liable to levy and sale on execution against H.

2. APPEALS AND WRITS OF ERROR—*finding of facts by Appellate Court is final and conclusive on this court.* Under section 88 of the Practice act, where the Appellate Court finds the facts different from the circuit court, and incorporates in and recites the facts as found, in its final judgment, the judgment of the Appellate Court is final and conclusive as to all matters of fact in controversy.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Marshall county; the Hon. T. M. SHAW, Judge, presiding.

Mr. FRED S. POTTER, for the appellant:

The substance of the contract was an attempt to make a conditional sale, and to secure the purchase money to the appellant. *Heyford* v. *Davis,* 102 U. S. 235; *Hart* v. *Barney,* 10 Bush, 337; *Van Duzor* v. *Allen,* 90 Ill. 499.

Such a contract is binding as between the parties. *Chickering* v. *Bastress,* 130 Ill. 206; *McDowell* v. *Stewart,* 83 id. 538.

What was the real object or purpose of the parties,—whether to cover a sale under the label or device of a consignment for

sale, to preserve a lien on the goods, or whether it constituted a contract of bailment,—is a question to be determined by the court, upon a construction of the instrument. *Heyford* v. *Davis*, 102 U. S. 235; *Hervy* v. *Locomotive Works*, 93 id. 664; *Fish* v. *Benedict*, 74 N. Y. 613; *Chickering* v. *Bastress*, 130 Ill. 206; *Murch* v. *Wright*, 46 id. 487.

It is not a question of actual fraud,—it is one of legal fraud, in that the transaction is forbidden by and is contrary to law, and hence entitled to no recognition by the law. In support of this proposition I beg leave to urge the cases last cited, and *McCormick* v. *Hadden*, 37 Ill. 370; *Ketchum* v. *Watson*, 24 id. 591; *Shove* v. *Farwell*, 9 Bradw. 256; *Chickering* v. *Bastress*, 18 Ill. App. 198; *Hadfield* v. *Berry*, 28 id. 376; *Co-operative Stove Co.* v. *Matson*, 30 id. 372.

Mr. JOHN E. POLLOCK, and Mr. EDWARD BARRY, for the appellee:

We are familiar with the law of Illinois regarding conditional sales, or sales made with reservation of title in the vendor until the price is paid, as laid down in *Murch* v. *Wright*, 46 Ill. 487, *Chickering* v. *Bastress*, 130 id. 206, and other cases. The contracts in all of these cases provided that upon the payment of a certain sum of money the property should become the purchaser's, delivery being made at the time the contract was made. In nearly all of this class of cases notes were given for the purchase price, with a stipulation that when paid the title should vest in the purchaser. We do not understand, however, that this court has made, or attempted to make, any ruling which renders void all commission contracts, of every kind and nature.

It is a familiar rule of law that goods held on consignment can not be taken on execution against the consignee. *Gray* v. *Agnew*, 95 Ill. 315; *Ellsnor* v. *Radcliff*, 21 Ill. App. 195.

There is no evidence in the case at bar to show fraud, and the contract being one of bailment, nothing short of actual

fraud would defeat the contract. *Rosencrans* v. *Hanchett*, 30 Ill. App. 283.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of trespass, brought by William Harrison, against Louis A. Lenz, sheriff of Marshall county, to recover the value of a certain number of wagons which had been levied upon and sold by the defendant under an execution in favor of Martin & Co., issued August 12, 1892, on a judgment rendered in the circuit court of Marshall county against T. L. Harrington. In the circuit court the parties, by agreement, waived a jury, and the case was heard by the court, and upon the evidence introduced, the court entered judgment in favor of the defendant. The plaintiff appealed to the Appellate Court, where the judgment of the circuit court was reversed, and as the amount of the recovery was agreed upon, providing plaintiff was entitled to recover at all, the court entered judgment in favor of the plaintiff for $963. The Appellate Court also made a finding of facts, and incorporated the facts as found in its final judgment, as follows:

"Finding of facts to be incorporated in the final judgment, as being different from those found by the court below, and upon which the judgment of this court is based, viz: And this court finds that the defendant in the execution, T. L. Harrington, held the wagons and property in question, the basis of the judgment herein, as the agent and factor of appellant, and held the same for sale as such, and that he, the said Harrington, was not at the time of the levy, or at any other time, before or after, the owner of the said property, but, on the contrary, the appellant was, at the time of the said levy and sale, a *bona fide* owner of the said property, and had the right to the possession thereof, as against the said execution creditors, Martin & Co., and as against the appellee, the said sheriff, and as against any other persons whomsoever. The above

finding is based solely upon the written contract between the said appellant and the said T. L. Harrington, appearing in evidence, dated March 4, 1892, and is the result of the legal construction given to the same by this court; and it is further found that there is no evidence tending to establish a sale of the said goods by said appellant to said Harrington; and we further find that the amount of the judgment is fixed by the evidence and agreement of the parties thereto appearing in the record."

Under section 88 of the Practice act, where the Appellate Court finds the facts different from the circuit court, and incorporates and recites the facts as found, in its final judgment, the judgment of the Appellate Court is final and conclusive as to all matters of fact in controversy. So far, therefore, as the facts are concerned, they are not a subject of review here, and the only question for our consideration is, conceding the facts to be as found, was the law properly applied to the facts. It will, however, be observed that the finding of facts by the Appellate Court is predicated principally on the construction of the written contract executed by Harrison and Harrington, under which Harrington secured the wagons from Harrison, and on disposing of the case it will be necessary to consider the terms and conditions of that contract.

The plaintiff, as appears from the record, resided at Grand Rapids, Michigan, where he was engaged in manufacturing wagons. Harrington resided at Henry, this State, and was engaged in the sale of wagons. On the 4th day of March, 1892, Harrison, as party of the first part, and Harrington, as party of second part, entered into a written contract which provided :

"*First*—The party of the first part has appointed and does appoint the party of the second part to act as his agent for the sale of his wagons in Henry, Illinois.

"*Second*—The party of the second part hereby undertakes and accepts the said agency, and agrees to the following con-

ditions, viz: Will pay freight charges, local and general taxes on the wagons, have them properly housed and under cover, and will make good any loss or damage by fire; will pay all expenses whatever; will sell to no person or firm on credit whatever, except such as is of undoubted solvency and financially responsible, and on all time sales which shall not exceed twelve months, will take notes on blanks as enclosed, with interest at the rate of seven per cent per annum from the date of sale; will endorse all notes, guaranteeing their prompt payment when and where due; will so conduct the business that the time of final payment in Grand Rapids shall not exceed twelve months from date of shipment; will transmit to the office of the party of the first the proceeds of each cash sale, or part cash sale, on the day the sale is made or by first mail thereafter; and further, on the last day of every month will make out an account of sales for the current month, and transmit the same, together with all notes, to the office of the party of the first part, and at any time after twelve months from date of shipment, to give his own note for balance of consignment unpaid, on four months, with interest at seven per cent from date last above named, if so required by party of the first part, but nothing herein shall be construed as amounting to a positive sale without said requirements, and that during the continuance of this contract they will sell no wagon other than . . . . .

"*Third*—It is further understood and agreed that the party of the first part will invoice all wagons to the party of the second part at the prices specified on the back of this agreement, and that on final settlement of each consignment, all sums over and above such specified prices for which the party of the second part may sell the wagons, shall be allowed to the party of the second part as full commission and other charges, more especially enumerated in clause two of this agreement."

Under this contract, on the 1st day of June, 1892, Harrison shipped Harrington a car-load of twenty-four wagons, which

Harrington received at his place of business at Henry, and commenced selling the same. Harrington sold three of the wagons, and the balance were levied upon and sold by the sheriff. No other consignment was made. There is no finding of actual fraud between the parties, nor is there anything in the record from which it can be inferred, nor was there an attempt to conceal or cover up the true ownership of the property for the purpose of preventing the creditors of Harrington from taking it on execution. The decision of the case rests solely on the construction of the contract. This is conceded in the argument.

There is no similarity between this case and cases where there is a conditional sale or sales made, with a provision in the contract that the title to the property shall not pass until paid for by the vendee. The rule, therefore, established in *Murch* v. *Wright*, 46 Ill. 487, and other cases of like import, does not apply here. The contract is not a mortgage, nor is it an instrument in the nature of a mortgage. Harrington was not indebted to Harrison. There was no debt to be secured, and in the absence of a debt it is not perceived what object the parties could have in making a mortgage. Section 31, chapter 95, of the statute, providing "that no mortgage, trust deed or other conveyance of personal property having the effect of a mortgage or lien upon such property shall be valid, as against the rights and interests of any third person, unless the possession thereof shall be delivered to and remain with the grantee," etc., has no application to this case.

As we understand the contract, when reviewed in all its parts, the wagons were shipped to Harrington to be sold by him as the agent of Harrison. Harrington did not agree to purchase the property, nor did Harrison agree to sell to him. The price of the wagons was specified on the back of the contract, and Harrington was clothed with authority to sell, and retain as his commission whatever sum he might receive over the specified price. The commission over the specified price

was the interest, and the only interest, Harrington had in the property, and whether that would amount to anything depended entirely upon the success he might meet with in making sales. Harrington never gave a note or any other obligation agreeing to pay for the wagons, and by the terms of the contract there was no provision under which he could at any time become the owner of the property.

It will be observed that in the last part of the second clause of the agreement it is provided that Harrington shall, "on the last day of every month, make out an account of sales for the current month, and transmit the same, together with all the notes, to the office of the party of the first part, and at any time after twelve months from the date of shipment, to give his own note for balance of consignment unpaid, in four months, * * * if so required by party of first part." This clause it is contended indicates that the transaction was a sale. If this clause was to be considered alone there might be force in the position of counsel, but in the construction of a written contract all the provisions are to be considered together, and from the whole contract arrive at the intention of the contracting parties. A clause in the contract immediately preceding the one relied upon, provides that Harrington will so conduct the business that the time of final payment in Grand Rapids shall not exceed twelve months from the date of shipment. From this clause it is manifest that Harrison wished to compel the sale of a consignment of wagons within one year from the time the wagons were placed in the agent's hands, and the proceeds should be paid over. Now, the clause holding Harrington liable for any unsold wagons after the year expired, if Harrison required it, was no doubt incorporated into the contract to compel the agent to promptly sell, and report sales within the year from the time he received the wagons.

*Bastress* v. *Chickering*, 130 Ill. 206, has been cited as an authority that the transaction is a sale. There are several features of the contract involved similar to the contract in

the case cited. But there is one marked distinction between that case and this one. These notes were given on receipt of the goods, and upon the payment of a note given for any one invoice the consignees were relieved of all further liability as respected that consignment, and the title to the property would vest. The contract in this case contains no such provision. Indeed, we find nothing in the contract, when all its provisions are considered, which can properly be construed in such a manner as to make the transaction a sale.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*