THE PEORIA MANUFACTURING COMPANY et al.

*v.*

D. LYONS, for use of David Bradley Manufacturing Co.

*Filed at Springfield October 30, 1894.*

CONTRACT—*for delivery of goods—whether bailment or sale.* A contract for the delivery of goods by a manufacturer to a retailer, which provides that such retailer shall give notes for the price of the goods, and shall turn over all proceeds of sales to apply on such notes until fully paid, *including commissions*, is a sale of the goods, although the contract expressly reserves control over them until paid for, and such goods may be taken on execution against the retailer. *Lenz* v. *Harrison*, 148 Ill. 598, distinguished.

APPEAL from the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Cass county; the Hon. CYRUS EPLER, Judge, presiding.

Action of debt on replevin bond. The David Bradley Manufacturing Company recovered a judgment against the firm of Weaver & Treadway, and caused execution to be levied on certain wagons, buggies, plows, rakes, etc., found in the place of business of the debtor firm. These vehicles and implements had been obtained from the Peoria Manufacturing Company under the contract mentioned below, executed by appellant and Weaver & Hutchins. Hutchins had transferred his interest in the property and business of the firm to Treadway, who took Hutchins' place, and the firm business was then carried on by Weaver & Treadway, who obtained the property levied on from the Peoria Manufacturing Company, under said contract. The Peoria Manufacturing Company replevied the property so levied on, but dismissed the suit without a trial on the merits, and without returning the property obtained under the writ of replevin. The Bradley Manufacturing Company, plaintiff in the execution, then caused suit to be brought by the coroner, for its use, against the Peoria Manufacturing Company, on the replevin bond, and recovered judgment for the value of that property taken under the writ of replevin. The Peoria Manufacturing Company took the cause, on error, to the Appellate Court for the Third District, where the judgment of the circuit court was affirmed, and it now brings this appeal to reverse said judgment.

The aforesaid contract was as follows :

"VIRGINIA, ILL., *January 15, 1892.*

"Contract made by and between Peoria Manufacturing Company, Peoria, Ill., of the first part, and Weaver & Hutchins, of Virginia, Ill., party of the second part :

"*Witnesseth*—First party agrees to deliver to second party, on the following conditions, farm wagons, plows, buggies and other goods, such as may be ordered by party of the second part and accepted by party of the first part, on commission for party of the first part. Second

party agrees to sell all such goods at retail prices, and the difference between the prices at which they were billed out on consignment to second party, and the price received by second party from their customers for same, to be their full commission, and party of the second part is to receive no other commission or pay from party of the first part.

"In case notes are taken by party of the second part from their customers in payment for such goods, the same are to be bankable notes, taken on blanks furnished by first party and in their name, payable to their order, and turned over to first party with second party's guarantee that said notes shall be paid promptly at maturity, and if said notes are not paid by their maker at maturity, said party of the second part shall pay at once principal and interest secured, without any exemptions under existing laws. This guarantee to be in full force until all notes and interest are paid. In case the goods are sold by second party for cash, second party shall turn over at once said cash to party of the first part. All goods ordered by second party to be on the same terms and conditions as above. Second party shall invariably receive notes or cash from their customers for goods sold.

"It is further agreed between the parties, that second party will advance to party of the first part their notes, to full amount of goods, when received by party of the first part, on time specified in such order, but said notes are not to be, in any case or sense, any settlement for said goods received by second party from first party. The proceeds for all goods delivered to party of the second part, and sold to his customers and turned over to first party, shall be credited upon second party's notes until principal and interest are covered in full. Party of the second part further agrees to keep all such goods thus consigned well housed and fully insured. Also to transfer any goods that may be ordered to any other

point free of drayage or transfer charges, and at the termination of this contract, January 1, 1893, to return all goods on hand, unsold, to Peoria, free of freight, at the option of the party of the first part.

"In consideration of the above contract, party of the second part agrees to handle exclusively the goods sold by party of the first part.

PEORIA MANUFACTURING CO.,
Per C. A. DAVIS, *Pres. and Treas.*
WEAVER & HUTCHINS."

Messrs. STEVENS & HORTON, Mr: GEORGE T. PAGE, and Mr. A. A. LEEPER, for the appellants:

Where goods are delivered to be sold at a fixed price, and paid for at fixed rates by the consignee if sold, accounts to be given monthly, it is a consignment for sale, and not a sale.    1 Benjamin on Sales, 8; *Audenried* v. *Betteley*, 8 Allen, 302; *Walker* v. *Butterick*, 105 Mass. 238.

This contract, strictly speaking, is a contract to sell upon a *del credere* commission, one essential of such a contract being the guaranty of the payment of goods sold on credit.    Mecham on Agency, sec. 14; *Plow Co.* v. *Porter*, 82 Mo. 23; *Bank* v. *Heilbrowner*, 108 N. Y. 439; *Bank* v. *Schween*, 127 Ill. 578.

The mere fact of the giving of the notes does not bring it within the legal definition of a fraud in law.    All goods remaining on hand at the end of the season were to be returned or shipped elsewhere, as directed.    *Rosencranz* v. *Hanchett*, 30 Ill. App. 283; *Moss* v. *Stone*, 5 Barb. 516; *McCullough* v. *Porter*, 4 W. & S. 177; *Alexander* v. *Tomlinson*, 40 Ark. 216; *Walker* v. *Butterick*, 105 Mass. 237.

A contract by which the property of one person is to remain in the possession of another, and which does not contain any provision looking to the acquisition of title by that other, cannot be construed into a conditional sale. *Williams Bros.* v. *Davis*, 47 Iowa, 363; *Plow Co.* v. *Porter*, 82 Mo. 23.

° The notes were simply a further guaranty or security for the faithful accounting for the proceeds of sales in accordance with the contract. *Burton* v. *Goodspeed,* 69 Ill. 237; *Plow Co.* v. *Porter,* 82 Mo. 23.

Weaver & Treadway could sell the goods only in the manner provided in the contract of consignment. *Gray* v. *Agnew,* 95 Ill. 315.

The fact that the goods were billed as sold does not change the contract. *Bailiss* v. *Davis,* 47 Iowa, 342.

Mr. R. W. MILLS, for the appellee :

The general principles which control have been clearly set forth in the former decisions of this court. *Chickering* v. *Bastress,* 130 Ill. 206 ; *Lenz* v. *Harrison,* 148 id. 598 ; *Stove Co.* v. *Matson,* 30 Ill. App. 372.

This consignment of goods falls within the rule announced in *Lonergan* v. *Stewart,* 55 Ill. 49.

Mr. JUSTICE CARTER delivered the opinion of the court:

The proper construction of the contract under which Weaver & Treadway obtained the property levied on, must, of course, control the decision of this case. It is contended by appellants that it was a mere contract for consignment for sale on commission, while appellee insists that it was a contract of sale. We fully concur in the views on this question as expressed in the following opinion of the Appellate Court, delivered by Mr. Justice BOGGS :

"Whether the agreement was a consignment of goods for sale upon commission, or a sale of the goods, is the only question arising upon the record. In form, and according to the designation given it by the parties, the agreement was for the consignment of goods for sale: But we are concerned as to its real character, which is to be determined from considerations apart from its mere form, or the name applied to it, or to any act to be done under it. The purpose and intent of the parties, and the legal ef-

fect, as to third parties, of what they agreed to do, may be best determined from the transactions authorized, or contemplated to be performed, by force of the terms and conditions of their contract. Thus construed, and its provisions considered in the same consecutive order as the acts under it were to be performed, rather than in the order in which the provisions are incorporated in the agreement, we find, first, that Weaver & Treadway were to order goods from the manufacturing company; second, that the company should, if it desired to do so, fill the orders and ship the goods at prices fixed by it, and render regular bills of invoice therefor; third, that Weaver & Treadway were to execute and deliver their notes to the manufacturing company for the value of the goods as shown by the bills so rendered by the company; fourth, that the contract contained no provision empowering Weaver & Treadway to return the goods or articles so received from the company, in settlement, in whole or in part, of their notes.

"So far the transactions contemplated to be done differ in no material respect from ordinary sales of goods by one party to another. Nor do we think anything otherwise appearing in the contract operates to take the transactions agreed to be performed, out of the category of sales. The provision that Weaver & Treadway should sell the goods at retail prices certainly has no such effect, for that is fairly in ordinary contemplation in all cases when retail dealers purchase goods to be by them again sold. The difference between the price paid or to be paid for goods, and the price obtained for them when sold at retail, constitutes the profits of the retailer, and was not transformed into a commission, upon the sale, because parties in this instance choose to give it that designation. Weaver & Treadway were required by other terms of the contract to sell all articles for cash, or for the notes of the buyer, and to deliver the proceeds of each sale, whether cash or a note of the buyer, to the

manufacturing company. This requirement, it is suggested, clearly establishes that the goods were held for sale upon commission. We think not. The proceeds of every sale made by the firm consisted, in part, of the profits made upon the sale, or 'commission' thereon. Commissions earned by sales of goods by agents or commission merchants belong to such agents or merchants, and, as such, are retained by them, and the net proceeds only remitted to the principal or consignor. Under this contract, however, all 'commissions' were to be delivered over to the principal, to be by it credited upon the notes of Weaver & Treadway given for the goods, 'until the principal and interest of the notes are fully paid.' The application of the proceeds of each sale as a payment upon these notes would, in effect, recompense the manufacturing company for the article sold, and pay an additional sum (the amount of the commission) upon the balance due it for other articles yet remaining to be sold. Thus Weaver & Treadway would, if we accept the contention of the manufacturing company, be constantly applying their earnings to the payments of notes given for goods which, according to such contention, they had not bought and did not own, but only had possession of as agents for the true owner. The continued application of the entire proceeds of all sales to the payment of the notes given by the firm might, and most likely would, result in fully discharging and paying the notes before all the articles for which the notes were given had been sold, yet according to the argument such unsold articles, though fully paid for, would remain the property of the manufacturing company. A construction leading to such absurdities cannot be adopted. The application of the proceeds of sales so provided for is consistent only with the view that Weaver & Treadway purchased the goods upon credit, granted upon condition that they would devote the entire proceeds of all sales to the payment of the indebtedness created by such purchase,

153—28

"The requirement that Weaver & Treadway should keep the goods well housed and insured, is nothing beyond what is usual in cases where liens upon personal property are relied upon to secure the payment of money. Compliance therewith was equally important to the Peoria Manufacturing Company, whether it was the owner of the property, or merely held a lien upon it to secure the payment of the notes of Weaver & Treadway. This provision of the agreement is as fully consistent with the position that the goods had been sold and a lien for the purchase price reserved, as that the goods were held under consignment for sale upon commission.

"Authority is given the manufacturing company, by the contract, to require all goods remaining unsold at the expiration of the contract to be returned to it. Whether such return shall be made is, however, at its option. Unless the option be exercised by the company, Weaver & Treadway must retain the goods and be answerable upon their notes given to the company for them, and the manufacturing company could not exercise the option if the application of the proceeds of sales had, under the terms of the contract, discharged the notes given by the firm. If, at the date named as the time for the expiration of the contract, such notes were unpaid or partly unpaid, the articles covered by the agreement remaining unsold might, as between the parties, be demanded and taken by the manufacturing company. The agreement is silent as to the disposition to be made of any articles that might or should be so taken, yet no one will contend but that the law would require the manufacturing company to expose them for sale, for the purpose of raising a fund for the payment of the notes, or the unpaid balance of any notes, held against Weaver & Treadway, and the cost of sale, etc., and to sell as many of the articles so taken as might be found necessary for that purpose, and return any article or articles not necessary to be sold to Weaver & Treadway, as in other cases where liens

upon personal property are enforced by seizure and sale. So it seems clear the authority given to take the property is in no material respect different from that possessed by mortgagees of chattel property.

"But one other clause of the contract remains to be considered. It empowers the manufacturing company to order the goods to be shipped to other points before the expiration of the contract, and may seem to give color to the claim that the goods were held for sale upon commission. It is manifest, however, that this power of control over the goods could not be exercised if the proceeds of the sales of articles received under the contract had been so applied, under its terms, as to discharge and pay the notes of the firm. The power existed only so long as the manufacturing company held unpaid notes of the firm. If payment of the notes operated to divest the manufacturing company of all power over the goods, it must, it seems, be clear that the power existed only as a means of securing the indebtedness evidenced by the notes.

"The conclusion seems inevitable that Weaver & Treadway were invested with full title to the goods, subject to such control thereof or lien thereon as the instrument created in favor of the manufacturing company. As to execution creditors of the firm, the title of the firm was unaffected by these liens or rights of the manufacturing company, because our statute makes void as to such third parties such secret liens upon chattel property.

"The doctrines announced by our Supreme Court in the case of *Chickering et al.* v. *Bastress*, 130 Ill. 206, are applicable to the questions here discussed, and fully support the conclusion we have reached."

It is insisted here that the opinion of this court in *Lenz* v. *Harrison*, 148 Ill. 598, which was not published when this case was submitted to the Appellate Court, is of controlling importance in the decision of this cause,— that that opinion "completely brings the present contract within the law of bailment." We cannot so hold. A care-

ful comparison of the two contracts will show marked differences between them in the respect mentioned. In the first place, there is no provision of controlling importance in the contract involved in *Lenz* v. *Harrison* that gives to it a character different from that which it plainly, on its face, purports to be, viz., a contract of agency. Its different features, and the distinctions between it and a conditional sale, are pointed out in the opinion in that case and need not be repeated here. But it will be observed that the contract involved in the case at bar provides for the creation of an indebtedness of Weaver & Hutchins to the Peoria Manufacturing Company, and the giving of their notes therefor, for the price of the goods, as delivered by the company to them. It is true, the contract provides that such notes "are not to be, in any case or sense, any settlement for said goods," but the clear import of the contract, though not expressed in words, when interpreted in accordance with legal principles or the common understanding of men, is, that when the notes should be paid it was intended the title should pass. The contract did not contemplate that the notes to be taken by Weaver & Hutchins from their customers, for the goods retailed, though payable to the company, should constitute the indebtedness to the company for the price it was to receive, but a security, merely, for the payment of the notes of Weaver & Hutchins given for their indebtedness to the company. The proceeds of those notes, as well as all cash received by Weaver & Hutchins on their sales, and which, interpret the contract as we may, contained their commissions or profits, were by the contract to be credited on their notes until principal and interest should be covered in full. The contract clearly contemplates an indebtedness of Weaver & Hutchins to the company for the price of the goods as billed to them, and provides for its payment, and undertakes to secure such payment, not only by applying all proceeds of their sales,

but by reserving the right to have returned all goods unsold at the termination of the contract.

We think no one can impartially read this contract in the light of the law as established in this State, where the rights of execution creditors are involved, as here, without concluding that it is one of sale, and not of bailment. It must follow that the property was subject to the execution of the judgment creditors of Weaver & Treadway which had been levied upon it.

The judgments of the Appellate and circuit courts will accordingly be affirmed.

*Judgment affirmed.*