---

## In re GALT.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

No. 906.

1. BAILMENTS—CONSTRUCTION OF CONTRACT—BAILMENT OR CONDITIONAL SALE.
   Whether a contract by which one party agrees to send to the other goods to be sold by him constitutes a bailment or a conditional sale depends on whether the sender has the right to compel a return of the thing sent, or whether the receiver has the option to pay for the same in money.

2. SAME—CONTRACT CONSTRUED.
   A manufacturing corporation entered into a contract by which it appointed a man its agent for the sale of its wagons at a place named. It

agreed to furnish him with wagons at certain discounts from the list prices; the wagons to be sold by him, and accounted for as sold in cash or purchasers notes. All notes taken were to be indorsed by the agent and sent to the company, and, in case they should be for a greater amount than the price of the wagons to be accounted for, the "surplus of commission" contained therein was to be paid to the agent when and in proportion to the amount collected. All wagons not sold within 12 months were, at the option of the company, to be paid for by the other party in cash or by note, or to be turned over to the company. The contract further provided that the ownership of all wagons, or their proceeds, should remain in the company until settlement should be made therefor, and that the money and effects received in the course of the business of the agency should "in no case or under any circumstances be appropriated to the private use of the party of the second part." It also provided that the company might revoke the appointment at its pleasure, and at any time take possession of all or any part of the property. *Held*, that such contract was one of bailment, and not of conditional sale, and that on the bankruptcy of the agent the company was entitled to reclaim the goods remaining in his possession.

Appeal from the District Court of the United States for the Northern District of Illinois.

On February 25, 1902, Frank Galt filed in the district court a voluntary petition in bankruptcy, and was adjudged a bankrupt February 28th, and thereafter I. L. Weaver was duly appointed his trustee. On March 12, 1902, the Mitchell & Lewis Company, Limited, a corporation of the state of Wisconsin, located at Racine, in that state, filed its petition in the bankruptcy proceedings, representing that on April 26, 1901, the petitioner appointed Frank Galt, the bankrupt, its agent at Sterling, Ill., for the sale of its manufacture under which certain goods were consigned to Galt for sale, of which, at the time of the filing of the petition in bankruptcy, Galt had on hand goods of the value of $987.85, which were taken possession of by the trustee in the bankruptcy proceeding, and which he refused to deliver to the petitioner. The contract under which the goods were consigned, as claimed, is as follows:

"This agreement, made and entered into in duplicate this 26th day of April, 1901, by and between Mitchell & Lewis Co., Limited, of the city of Racine and state of Wisconsin, party of the first part, and Frank Galt, of Sterling, county of Whiteside, state of Illinois, party of the second part, witnesseth, that the said Mitchell & Lewis Co., Limited, for and in consideration of the covenants and agreements hereinafter named, do hereby appoint said party of the second part their agent for the sale of their farm wagons from the date hereof until January 1, 1902, in and for the following territory, to wit: Sterling and vicinity, in the state of Illinois, and in no other place or places, except as herein provided, without special permission in writing. The said Mitchell & Lewis Co., Limited, agree to furnish the said party of the second part, on board cars at Racine, Wis., the wagons this day ordered, as described on order blank hereto attached, at the following prices: Farm wagons with regular wheels, regular tire, seats, and brakes, 40 per cent. discount from their list prices in catalogue No. 50, page 43–65. Extra charge for wider or thicker tire, 40 per cent. discount from their list price in catalogue No. 50, page 43, 66, 67. Farm wagons extras for repairs, 40 per cent. discount from their list prices in catalogue No. 50, pages 73–78. In lieu of discount from list prices, all wagons are to be settled for at net prices named on order blank hereto attached, or such prices as are named on other side of this sheet. The same to be sold, and accounted for to the said Mitchell and Lewis Co., Limited, in cash or purchasers' notes, as follows: All notes taken for said wagons are to be on the blanks furnished by Mitchell & Lewis Co., Limited; are to bear seven per cent. interest per annum from date until paid, and not running over six months from date of sale, made payable at the nearest bank or express office, with the post-office address of the purchaser distinctly written thereon.

As an inducement to make sales. for cash only, said Mitchell and Lewis Co., Limited, agree to allow said party of the second part the sum of five per cent. on all cash sales; the cash to be remitted to said Mitchell & Lewis Co., Limited, as hereinafter stated. It is agreed that, after the first shipment under this contract, the prices on all future shipments of wagons shall be subject to such change as may be occasioned by the advance or decline in material or labor. The said Mitchell & Lewis Co., Limited, warrant all their wagons as per printed form of warranty in catalogue. The said party of the second part agrees to receive, store, pay freight, and keep under cover, in good condition and fully insured, at his own expense, all wagons sent him, until sold or ordered away by the party of the first part as herein provided; to pay all the taxes on wagons on hand, should any assessment be made; to make all reasonable efforts to sell said wagons; and not to sell or assist in the sale of any other wagon or wagons, except those furnished by the party of the first part under this contract; to settle for all wagons sold by him as such agent, make all sales and take all evidence of indebtedness therefor, for and in the name of said party of the first part, upon such blanks as the party of the first part shall furnish, and remit the cash and notes received for said wagons to the party of the first part in the following manner: The cash to be remitted as early as the day following the date of sale, by draft on Chicago or New York, payable to the order of Mitchell & Lewis Co., Limited, and the notes to be transmitted every thirty days, or as much oftener as said second party may desire; each remittance of notes to be accompanied by a statement showing the number and kind of wagons on hand and unsold. All notes so transmitted are to be indorsed and payment guarantied by the said party of the second part in the following form, viz.: 'For value received, the undersigned guaranty the payment of the within note, and hereby waive notice of protest, demand, and nonpayment thereof.' The party of the second part agrees that all notes or obligations indorsed or guarantied by him, if not paid in two months after maturity, he will take up the same, and pay the cash to said party of the first part. In case all the sales should be for notes, and the notes so returned to Mitchell & Lewis Co., Limited, should be for a greater amount than the price of wagons to be accounted for as herein stated, the surplus of commission contained in said note or notes will be paid to the party of the second part, when and in proportion to the amount collected. The party of the second part further agrees to sell all wagons shipped him under the within agreement within twelve months from date of shipment, and, in case of any failure or neglect to do so, agrees to settle at the expiration of that time, or at any time thereafter when called upon to do so, for all wagons and parts of wagons remaining on hand unsold, at prices hereinbefore stated in the following manner, to wit: At the option of the Mitchell & Lewis Co., Limited, to either pay the cash for said wagons, or give his note, due in four months, with seven per cent. interest after maturity, payable to Mitchell & Lewis Co., Limited, or order, or to store said wagons in good order, free of charge, subject to the order of said Mitchell & Lewis Co., Limited. If the said party of the second part at any time during the continuance of the within contract sell or close out his business, he agrees to purchase all wagons remaining on hand unsold, paying cash therefor, or transfer same to his successors on such terms as will be satisfactory to the party of the first part, without cost to said party of the first part. If the terms of contract are complied with, and the said party of the first part should order one or more or the whole of said wagons reshipped or turned over to other parties, the party of the second part will be entitled to the actual freight and drayage only, that he may have paid out on each of said wagons, which is to be in full of all charges; but if, from any violation of the contract, the said party of the first part conclude they want possession of such wagons and parts of wagons as are on hand with the said party of the second part, it is agreed that all such wagons and parts of wagons on hand are to be transferred to the said party of the first part free of all charges for freight and drayage that may have been paid on same by the said party of the second part. It is further agreed by and between the parties hereto that the ownership of all wagons furnished under this or any previous contract, or

their proceeds, shall remain in the Mitchell & Lewis Co., Limited, until settlement shall have been made for them by the said party of the second part as provided in the contract under which they were shipped, and that the money and effects received in the course of the business of this agency shall in no case or under any circumstances be appropriated to the private use of the party of the second part. If, from any cause whatever, the said Mitchell & Lewis Co., Limited, are unable to furnish the wagons ordered, they shall not be held liable for any commission or damage whatsoever; and it is further agreed that this appointment be, and the same is hereby, made revocable at the pleasure of the said party of the first part. No verbal agreement pertaining to the within contract, other than as specified herein, will be recognized.

"Witness our hands the day and year first above mentioned.

"Mitchell & Lewis Co., Limited,
"By H. S. Fairbanks, Agent.
"Frank Galt.

"Taken by H. S. Fairbanks, Agent.
"Subject to the approval of Mitchell & Lewis Co., Limited.
"Approved.
"Racine, Wis., July 22, 1901.
"F. L. Mitchell, Secy."

The referee to whom the matter was referred reported to the court in favor of denying the petition upon the ground that the contract was a contract of conditional sale, and not of agency, was not recorded, and that the title to the property claimed passed to the trustee for the benefit of the creditors, discharged of any claim or lien of the Mitchell & Lewis Company. Exceptions were filed to that report. The district court on May 19, 1902, sustained the exceptions, and directed the trustee to surrender to the petitioner the property. Thereupon the trustee of the bankrupt brings this latter decree, by appeal, to this court for review.

Aaron A. Wolfersperger, for appellant.

Martin J. Gillen, for appellee.

Argued before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge (after stating the facts). The questions suggested by the record are (1) whether the contract is one of bail-ment or of conditional sale; (2) whether, if the latter, a trustee in bankruptcy of the vendee in such sale may retain the property, as against the vendor, and in right of general creditors; the law of the state holding conditional sales void as to bona fide purchasers and attaching or execution creditors.

The law of the state of Illinois with respect to conditional sales, as expounded by its supreme court, runs counter to the great weight of authority, but has become a rule of property in that state, and we are bound to observe it. Harkness v. Russell, 118 U. S. 663, 678, 7 Sup. Ct. 51, 30 L. Ed. 285. It is to the effect that a bona fide purchaser or an execution creditor of the vendee is protected against the claim of the vendor. Western Union Cold Storage Co. v. Bankers' Nat. Bank, 176 Ill. 260, 266, 52 N. E. 30.

The distinction between bailment and sale is not difficult of ascertainment, if due regard be had to the elements peculiar to each. In bailment the identical thing delivered is to be restored. In a sale there is an agreement, express or implied, to pay money or its equivalent for the thing delivered, and there is no obligation to return. Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093; Union

Stock Yards & Transit Co. v. Western Land & Cattle Co., 7 C. C. A. 660, 59 Fed. 49. The bailee may, however, by contract, enlarge his common-law liability without converting the bailment into a sale. The real intent of the contracting parties must be ascertained from all the provisions in the agreement which express the contract, bearing in mind always that in a bailment the bailor may require the restoration of the thing bailed, and in a sale, whether absolute or conditional, there must be an agreement, express or implied, to pay the purchase price of the thing sold. The test would seem to be—Has the sender the right to compel a return of the thing sent, or has the receiver the option to pay for the thing in money?

Carefully analyzing the agreement in hand, we think it must be held that the contract of the parties was one of bailment, and not of conditional sale. The Mitchell & Lewis Company thereby appoints Galt its agent for the sale of its manufacture in the limited territory stated, and in no other place or places; agrees to furnish the goods to the agent at 40 per cent. discount from list prices; they to be sold by him, and accounted for to the company in cash or notes of the purchaser drawn upon blanks furnished by the company, running not more than six months, with interest, and made payable to the company; their payment being guarantied by Galt. As an inducement to making sales for cash only, an allowance of 5 per cent. on such sales is allowed by the company. All cash is to be remitted not later than the day following the sale; notes to be transmitted every 30 days. If all sales should be upon time, and the notes returned to the company should aggregate more than the prices of the wagons to be accounted for, the surplus is to be returned to Galt when and in proportion to the amount collected. He agrees to sell all wagons within twelve months from date of shipment, and upon failure so to do, at the option of the company, to (1) pay cash for wagons on hand, at the prices stated; or (2) give his note therefor; or (3) store the wagons subject to the order of the company; the ownership of all wagons furnished to remain in the company until settlement as provided; the money and effects received by Galt in the business of the agency in no case to be appropriated to his private use. Galt agrees to store and keep under cover and in good condition all wagons received; to keep them fully insured at his own expense until sold or ordered away by the company; to pay taxes upon them, if any should be assessed; and he is not to sell or assist in the sale of any other wagons than those manufactured by the company.

Applying to this contract the test stated, it is clear that here was a bailment, and not a conditional sale. It was not contemplated that Galt should ever own these wagons. He was to sell them to others for the company; his commissions to be the amount which he might receive over the prices stated in the contract. The proceeds, whether in cash or in notes of the purchaser, were to be immediately returned to the company; the notes being guarantied by Galt. This was a del credere commission, and not a sale. The company could compel a return of the goods not sold. Galt had not the option to pay for them in money. Even with respect to the goods unsold within the 12 months, the option for their return or payment

was with the company, and not with Galt; and nowhere in the agreement does the latter covenant to pay for these goods as in the case of a sale.

It is claimed that the agreement is a conditional sale, within the doctrine of Chickering v. Bastress, 130 Ill. 207, 22 N. E. 542, 17 Am. St. Rep. 309, and Manufacturing Co. v. Lyons, 153 Ill. 427, 38 N. E. 661. But in each of those cases the party receiving the goods gave to the other his notes, evidencing a contract to pay absolutely; the proceeds of the sales to be applied upon the notes. The case is like to that of Lenz v. Harrison, 148 Ill. 598, 36 N. E. 567, where an agreement similar to the one in hand was held to be a bailment, and not a sale. The clause in the contract giving an option to the company to require Galt to give his note, or to pay in cash, or to store, subject to the order of the company, the goods not sold within 12 months, is probably the strongest clause in the contract to indicate a sale; but, as suggested by the supreme court of Illinois in Lenz v. Harrison, supra, while it might have such force considered alone, taking it with the whole contract, it was seemingly incorporated to compel the agent promptly to sell, and report sales within the time stated. The cases in Illinois are carefully distinguished in Manufacturing Co. v. Lyons, supra, and fully sustain our holding that the contract in question constitutes a bailment, and not a sale. Such construction accords with the decisions elsewhere upon like contracts. Williams Mower & Reaper Co. v. Raynor, 38 Wis. 119; State v. Leicham, 41 Wis. 565, 578; Manufacturing Co. v. Jones, 96 Wis. 619, 624, 72 N. W. 44; Walker v. Butterick, 105 Mass. 237.

This conclusion renders unnecessary the consideration of the second question suggested by the record.

The decree is affirmed.