### FRANKLIN v. STOUGHTON WAGON CO.

#### In re FRANKLIN.

(Circuit Court of Appeals, Eighth Circuit.	March 26, 1909.)

#### No. 2,966 (94).

1. BANKRUPTCY (§ 306*)—DECISIONS REVIEWABLE BY APPEAL—CONTROVERSIES ARISING IN BANKRUPTCY PROCEEDINGS.

The decision of a District Court on the petition of an adverse claimant to reclaim property taken possession of by a trustee in bankruptcy is reviewable by the Circuit Court of Appeals on appeal under Bankr. Act July 1, 1898, c. 541, § 24a, 30 Stat. 553 (U. S. Comp. St. 1901, p. 3431).

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 306.*

Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. BANKRUPTCY (§ 140*)—PROPERTY PASSING TO TRUSTEE—PROPERTY HELD BY BANKRUPT AS BAILEE—CONSTRUCTION OF CONTRACT.

A contract, under which a wagon company shipped wagons to a dealer to be sold so as to realize to such dealer the freight, expenses, and a commission above listed price to be settled for at such price when sold either in cash or in purchasers' notes guaranteed by the dealer, and which provided that until sold the wagons should remain the property of the company and subject to shipment on its order at any time on repayment of actual freight and charges paid thereon, was one of bailment and not of conditional sale, and on the bankruptcy of the dealer the company had the right to reclaim the wagons remaining unsold from his trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 140.*]

Appeal from the District Court of the United States for the Eastern District of Oklahoma.

On Petition for Review.

Robert J. Boone, for appellant.

William B. Moore, for appellee.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

RINER, District Judge. This case is here on appeal from a decision of the District Court affirming the order of a special commis-

sioner, which directed the return of certain personal property in the hands of a trustee in bankruptcy, and directing the referee to allow, as unsecured, the claim of the Stoughton Wagon Company for $91.50, when properly proved, against the estate, and also upon a petition for review. By agreement of the parties, both cases are to be considered upon the same record.

On the 28th of December, 1907, the Stoughton Wagon Company and George W. Hammer & Co. entered into a written contract for the sale, on commission, of wagons manufactured by the Stoughton Wagon Company to George W. Hammer & Co. upon the terms and conditions set out in the contract. Three of the wagons were disposed of by George W. Hammer & Co., leaving 13 in controversy in this proceeding, together with the claim of $91.50. It appears from the record that George W. Hammer was the party of the second part to this contract, alhough it is signed, "George W. Hammer & Co." While there is no explanation found in the record as to how the contract came to be signed George W. Hammer & Co., we presume it was signed in that form merely as a trade name; it being conceded by both parties that George W. Hammer is the only party interested as party of the second part to the contract. Subsequent to the making of the contract and the delivery of the wagons, George W. Hammer was adjudged a bankrupt, and his property, together with the property in controversy here, was taken possession of by the trustee in bankruptcy. Thereafter, on the 19th of June, 1908, the Stoughton Wagon Company filed its petition of intervention in the bankruptcy proceeding, claiming to be the owner of the wagons in controversy and requested that the same be delivered to it. The court referred the matter to a special commissioner, who, after taking the testimony, reported that the wagon company was entitled to the possession of the thirteen wagons held by the trustee and to have its claim for $91.50 allowed by the referee as an unsecured claim. The court approved the report and recommendation of the special commissioner, and an order was entered in conformity therewith.

The contract between the Stoughton Wagon Company and George W. Hammer & Co. is as follows:

"This agreement made and entered into this 28th day of December, 1907, by and between Stoughton Wagon Company, Stoughton, Wisconsin, party of the first part, and George W. Hammer and Company, Muskogee, Oklahoma, party of the second part, witnesseth:

"That said first party for and in consideration of the stipulation and agreements herein contained have this day appointed and by these presents do hereby appoint the second party for their authorized agent at Muskogee, Oklahoma, for the sale, on commission, of the goods and articles of merchandise designated hereon, or enumerated and described on schedules or orders of said second party, to be attached hereto as hereinafter provided.

"The party of the first part agrees to furnish on the orders of the said second party so long as they have the goods in stock to fill same during the continuance of this contract the goods and articles of merchandise designated hereon or on schedules or orders hereinafter made; said schedules or orders to set forth prices of goods, the place of delivery, and when properly signed by said party of the second part and accepted by Stoughton Wagon Company, to be attached to and made a part of this contract, reference being made to same on the face thereof, subject to the following conditions, agreements and obligations: The party of the second part agrees as follows:

"(1) To receive from the transportation companies and pay all transportation charges on same, the goods and articles of merchandise sent under terms of this contract.

"(2) To furnish proper warehouse room for all goods and articles of merchandise sent under terms of this contract.

"(3) To pay all taxes, license, rents, and all other expenses incidental to the safe keeping and sale of said goods and articles of merchandise, and to waive all claims against Stoughton Wagon Company for such expense.

"(4) To keep said goods and articles of merchandise insured for their full value at expense of said second party, in the name and for the benefit of Stoughton Wagon Company, in companies provided for them, and to turn over the policies to them, the said Stoughton Wagon Company and in case of any neglect or failure to insure as herein provided, to become personally responsible for any loss or damage that may occur to said goods while in the custody of said second party.

"(5) To keep samples of said goods and articles of merchandise set up in salesrooms suitable for the purpose and to make all reasonable effort to sell them.

"(6) To sell the goods and articles of merchandise sent under this contract for enough more than the prices set opposite said goods in the orders and schedules attached to pay all freight, taxes, expenses and commissions for doing the business, it being mutually understood that the prices set opposite said goods and articles of merchandise are to be furnished, and are the prices which said second party agrees to pay Stoughton Wagon Company for same, as per terms of this contract. The full profits, commissions and expenses of said second party for doing the business to be the difference between said prices received from the sale of said goods.

"(7) To sell all goods and articles of merchandise furnished on this contract, subject to the manufacturers' regular printed warranty, and to settle all claims for breakage and defects in accordance therewith, and agrees not to part possession with any of said goods until the full and satisfactory settlement shall have been made by purchaser, and will not allow under any circumstances any of said goods to be taken away before such settlement has been made.

"(8) The second party further agrees to make out and render to the said first party on the first day of each month, and oftener if requested, a full and complete report of sales made the month previous, or since the last report made, said reports to show the amounts received in cash from such sales, and the amount sold on time; and to accompany said report with a full settlement for all goods so reported sold said settlement to be made with cash, less 5 per cent. for all cash sales and with promissory notes at four months secured by good collateral paper bearing 7 per cent. interest after maturity. And the second party further agrees that when purchaser's notes are given in settlements for sales made as herein provided, said notes will be on blanks furnished by Stoughton Wagon Company and are to be taken only from good prompt paying purchasers. And the second party further agrees to indorse all such notes given to said first party in the following manner, to wit: 'For value received, I or we hereby guarantee the payment of the within note at maturity or any time thereafter and waive demand, protest, notice of protest and nonpayment.'

"(9) To furnish Stoughton Wagon Company (in case any failure of said second party to pay at maturity any obligation or evidence of debt arising under the contract) satisfactory security to secure the payment of all obligations or evidence of debt then outstanding. arising under the contract, whether due or not.

"It is further agreed and understood that the title to and ownership of all goods and articles of merchandise shipped said second party or at present on hand under terms of this contract, and all proceeds of the sales of the same, shall remain vested in the said first party, and be the sole property of same, subject to their order until full payment shall have been made for same as herein provided.

"It is further agreed that this contract is to remain in force for one year from date, unless just cause is found for annulling same. The party of the second part agrees to give to the party of the first part note for net amounts

of goods on hand per statement, due in six months time, all amounts paid, together with cash discount of 5 per cent. shall be indorsed on back of note. For balance of goods unsold at end of six months a new note shall be given, on which payments shall be indorsed as above. The title to the goods until the same are settled for by cash, shall remain in the name of Stoughton Wagon. Company, and all accounts and notes given under this contract are not accepted as payment, but only as evidence of indebtedness. At the end of the 12 months, said second party agrees if required by said party of the first part, to purchase at prices given in schedule or orders attached, all goods on hand unsold and not previously settled for, giving in settlement therefor a note or notes satisfactory to said first party, due in three months from date.

"It is also agreed that if at the maturity of said three months note there still remain goods on hand unsold to the amount of $200.00, then said three months note may be renewed for three months longer, for the amount of goods on hand unsold said three months note last described to bear interest at 8 per cent. per annum from date until paid. ˉ

"This contract is not transferable and should the second party hereto sell out or otherwise dispose of his business at any time, prior to its expiration, the right to declare this contract canceled and annulled from and after the date of such sale or transfer is reserved the party of the first part without prejudice and the second party hereto agrees if so required by the party of the first party, to make settlement for all goods then remaining on hand unsold, in manner and form as set forth in the paragraph next preceding this.

"The second part hereby agrees to forward any goods received on its contract at any time, and as said Stoughton Wagon Company or their authorized agents may direct charging only actual freight and drayage and a reasonable transfer charge, collecting same from transportation company as back charges.

| | | | | | | |
|---|---|---|---|---|---|---|
| 11 | 3″ | New Stoughton Farm Wagon, regular | | | | $58 50 |
| 1 | 3-½″ | " Stoughton Wagon Farm Wagon, regular | | | | 58 50 |
| 2 | 2-¾ | " " " " " " | | | | 56 50 |
| 1 | 3-½ | " " " " truck less double tree and neckyoke | | | | 38 50 |
| 1 | 2½″ | New Stoughton One Horse Wagon with shafts | | | | 33 00 |

"It is understood and agreed that, in writing and printing this paper contains the full and entire agreement between the parties hereto, and that no outside verbal or written understanding with any traveling agent of Stoughton Wagon Company is of any force or effect whatever.

"Given under our hand this 28th day of December, 1907, in the city of Muskogee, county of Muskogee, state of Oklahoma.

"Stoughton Wagon Co.,<br>
"Per M. M. J. Vea, Treas.<br>
"Geo. W. Hammer & Co.,<br>
"Party of the Second Part.

"Subject to approval of Stoughton Wagon Co.

"Approved: Stoughton Wagon Co.,<br>
"By M. M. J. Vea, Treas."

We think the question presented by the record can be disposed of on the appeal. Dodge v. Norlin, 133 Fed. 363, 66 C. C. A. 425; Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986; John Deere Plow Co. v. McDavid, 137 Fed. 802, 70 C. C. A. 422.

The question to be decided is whether the contract evidenced a conditional sale or merely a contract of agency. We think this case falls within the rules announced by prior decisions of this court. The distinction between conditional sales and contracts of bailment or agency was clearly stated by Judge Sanborn of this court in Re Columbus Buggy Company, 143 Fed. 859, 74 C. C. A. 611, where the court had under consideration a contract almost identical with the contract we are now considering. The court in that case said:

"A conditional sale is one in which the vesting of the title in the purchaser is subject to a condition precedent, or in which its revesting in the seller is subject to a failure of the buyer to comply with a condition subsequent. An agreed price, a vendor, a vendee, an agreement of the former to sell for the agreed price, and an agreement of the latter to buy for and to pay the agreed price are essential elements of a contract of sale. * * * The power to require the restoration of the subject of the agreement is an indelible incident of a contract of bailment."

The contract before us is not a contract in which the consignee can sell at any price or at any terms he chooses, but contains a plain provision that the goods are at all times subject to the order of the wagon company until they are sold, and we think there is no doubt about the right of the wagon company under the contract to require the goods returned. It provides:

The agent is "to sell all goods and articles of merchandise furnished on this contract subject to the manufacturers' regular printed warranty and to settle all claims for breakage and defects in accordance therewith, and agrees not to part possession with any of said goods until a full and satisfactory settlement shall have been made by purchaser, and will not allow, under any circumstances, any of said goods to be taken away before such settlement has been made."

And it is further provided in the contract:

"That the title to and ownership of all goods and articles of merchandise shipped to said second party, or at present on hand under terms of this contract, and all proceeds of sales of same shall remain vested in the said first party, and be the sole property of same, subject to their order until full payment shall have been made for same as herein provided. * * * The second party hereby agrees to forward any goods received on its contract at any time, and as said Stoughton Wagon Company, or their authorized agents may direct, charging only actual freight and drayage and a reasonable transfer charge, collecting same from transportation company as back charges."

Under these provisions we think the wagon company retained full control of the disposition to be made of the wagons, in that it could direct the goods returned to the house or shipped elsewhere as desired, and in this it lacks one of the necessary elements of a contract of sale, namely, to pay money or its equivalent for the goods delivered with no obligation to return. Metropolitan National Bank v. Benedict Co., 74 Fed. 182, 20 C. C. A. 377; Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093; Dows v. National Exchange Bank, 91 U. S. 618, 23 L. Ed. 214; Hunt v. Wyman, 100 Mass. 198; Mower & Reaper Company v. Raynor, 38 Wis. 119; Union Stockyards & Transfer Co. v. Western Land & Cattle Co., 59 Fed. 49, 7 C. C. A. 660; Weir Plow Co. v. Porter, 82 Mo. 23; In re Columbus Buggy Co., 143 Fed. 859, 74 C. C. A. 611; In re Pierce, 157 Fed. 757, 85 C. C. A. 14; In re Galt, 120 Fed. 64, 56 C. C. A. 470.

In the case last cited the court said:

"It was not contemplated that Galt should ever own these wagons. He was to sell them to others for the company; the notes being guaranteed by Galt. This was a del credere commission, and not a sale. The company could compel a return of the goods not sold. Galt had not the option to pay for them in money. Even with respect to the goods unsold within the 12 months, the option for their return or payment was with the company, and not with Galt; and nowhere in the agreement does the latter covenant to pay for these goods as in the case of a sale."

The provisions of the contract before the court in that case were in substance and indeed almost in the identical words of the contract we are considering. The contract must be read in its entirely, and its construction is not to be gathered from any separate provision of it. It is from the whole contract that the intention of the parties is to be gathered, and a careful examination of the agreement before us in the light of legal principles compels us to the conviction that it was a contract of bailment or agency only, and that the title to these wagons in the hands of George W. Hammer & Co. at the time of the adjudication in bankruptcy did not pass to the trustee. The trustee, of course, has such rights and such rights only as the bankrupt had at the time of the adjudication. As was stated by Judge Hook, in Re Pierce:

"That the trustee in bankruptcy has no greater right or title than the bankrupt had has been so often declared in cases like this and in cases of conditional sale that citations are unnecessary."

It follows that the order and decree of the District Court must be affirmed, and it is so ordered.