### In re REYNOLDS.

### Petition of BIRDSELL MFG. CO.

#### (District Court, E. D. Kentucky. December, 1912.)

BANKRUPTCY (§ 140*)—GOODS—CONTRACT—BAILMENT FOR SALE—AGENCY CONTRACT.

A contract, by which wagons were consigned to the bankrupt for sale as agent, provided that the agent's right to dispose of the goods should extend only to actual sales made in the regular course of trade for a sum not less than the invoice price with freight added and until so sold the title and property rights should remain in the consignor. It also provided that, on the first of each month, the bankrupt should account for all goods sold during the preceding month and settle for all goods sold for cash at the invoice price, less 5 per cent., and for such goods as were sold on credit he should settle to the extent of $100 by executing his four months' note. *Held*, that the contract was not a conditional sale, but a contract of bailment for sale, so that the consignor

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was entitled to reclaim such part of the goods as remained in the hands of the bankrupt at the time of the institution of bankruptcy proceedings, though not so as to goods sold.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 221, 225; Dec. Dig. § 140.*]

In Bankruptcy. In the matter of bankruptcy proceedings of T. F. Reynolds. On petition to review a referee's order in favor of the Birdsell Manufacturing Company to reclaim certain goods in the possession of the bankrupt. Reversed.

The following is a copy of the contract referred to in the opinion:

Birdsell Manufacturing Company, of South Bend, St. Joseph county, Indiana, hereinafter designated as "Company," and T. F. Reynolds of Cynthiana, in the county of Harrison, state of Kentucky, hereinafter designated as "Agent" hereby agree as follows:

First. Said Company hereby grants said Agent the privilege of handling its wagons on consignment in Cynthiana, county of Harrison, state of Kentucky, until such time as this contract may be terminated as hereinafter provided.

Second. Said Agent shall transact all business pertaining to the sale of said wagons, and shall pay all taxes, freight, storage and other expenses on same, and keep the same fully protected from the weather, and in good order, all at the Agent's own expense. Company agrees to keep said goods properly insured against loss by fire at its own expense. Agent's right to dispose of such goods as may be shipped him shall extend only to actual sales made in the regular course of trade, for a sum in no instance less than invoice price with freight added, and until so sold the title and property rights in said goods shall remain in the Company. All orders for goods, given by Agent to the Company under this contract, shall be subject to the approval of the Company.

Third. The entire proceeds from the sale of such goods shall be the sole property of the company, and shall be kept by the Agent separate and apart from his other funds, and shall be accounted for as hereinafter provided.

Fourth. Agent shall, on the first day of each month, and when requested to do so by the company, or its duly authorized representative, render a statement showing all goods on hand, and all goods sold during the preceding month, and shall at once settle for goods sold, in cash, at the invoice price thereof, less a discount of five per cent. In case Agent shall sell any wagons on time, he may settle with Company for same by executing his note due in four months, without interest, for the invoice price of goods sold, and in such case shall not receive five per cent. discount; but the amount of unpaid notes owing by Agent to the Company shall not, at any time exceed the sum of $100.00.

Fifth. If any goods delivered by the Company to the Agent shall remain unsold and in the possession of the Agent at the expiration of twelve months from the date of invoice of such goods, the Agent shall, if required by the Company, surrender said goods to the Company; or if the Company shall require it, Agent shall purchase said goods from the Company, at the invoice price thereof, less five per cent. discount.

Sixth. Should the Agent die or dispose of the business in which he is engaged at the time of making this agreement, or should he for any reason desire to terminate this contract, he shall, if requested by the Company, surrender all goods on hand to the Company; or if required by the Company, he shall purchase said goods of the Company, and pay the invoice price of same less five per cent. discount.

Seventh. The said company reserves the right to revoke this agreement whenever it may, in its judgment, deem it necessary for the protection of its interests, and receiving notice of such revocation, the Agent shall sur-

render to the Company all goods and property in the possession of Agent at the time, the goods to be in as good condition as when received by the Agent, and Agent shall pay for all damage to same and all charges, except freight only, and in such case Company will pay the Agent for such freight as Agent may have paid on goods so surrendered to the Company; no freight shall be repaid by the Company, if Agent becomes a bankrupt or insolvent.

Eighth. As compensation for all services and all outlays made by him under this contract, the Agent shall receive the five per cent. discount specified in clauses fourth, fifth and sixth, and also the surplus received by him over and above the invoice price of each article sold.

Ninth. All repairs shall be settled for by Agent in thirty days from date of shipment, whether sold by him or not, by remitting to the company the full invoice price for same, no five per cent. discount being allowed on repairs.

Tenth. All goods sold by Agent shall be sold under the warranty contained in the Company's current catalogue and none other.

Eleventh. Said Agent shall be governed by instructions of said Company, and shall reimburse said Company for any loss or expense resulting from any departure by him from the terms and conditions of this agreement, including all attorney fees, costs, and expenses incurred by the Company in enforcing this contract.

Twelfth. The failure of the Company to enforce at any time any provision of this contract, or the failure of the Company to exercise any of the options herein granted it, shall not affect or impair the validity of any part of this contract; and the Company may at any time exercise such options or enforce such provisions.

Thirteenth. This agreement embodies the entire understanding between the parties, and cannot be modified except by writing, duly executed by both parties. It shall be binding on both parties when signed by said Agent, and also by the Company at South Bend, Indiana, by one of the officers thereof.

C. M. Jewett, of Cynthiana, Ky., for petitioner.
Harry Bailey, of Cynthiana, Ky., for trustee.

COCHRAN, District Judge. This cause is before me on petition for review filed by the Birdsell Manufacturing Company, complaining of an order of the referee denying its petition, whereby it asserted ownership to certain property in the possession of the trustee. Its right thereto depends on the nature of its contract with the bankrupt under which the unsold property in the possession of the trustee and claimed by it was delivered to him. Was it a bailment for sale or a conditional sale? If a conditional sale, it was a mortgage, and, not having been recorded, the trustee takes precedence over it by virtue of the amendment of 1910 (Act June 25, 1910, c. 412, § 8, 36 Stat. 840 [U. S. Comp. St. Supp. 1911, p. 1500]) to section 47a (2) to the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438]), and the petition was properly denied. It is only on the basis that it was a bailment for sale that the petitioner was entitled to any relief. I think that the contract was a bailment for sale under these authorities. In re Galt (C. C. A., 7th Cir.) 13 Am. Bankr. Rep. 575, 120 Fed. 64, 56 C. C. A. 470; John Deere Plow Co. v. McDavid (C. C. A., 8th Cir.) 14 Am. Bankr. Rep. 653, 137 Fed. 802, 70 C. C. A. 422; In re Columbus Buggy Co. (C. C. A., 8th Cir.) 16 Am. Bankr. Rep. 759, 143 Fed. 859, 74 C. C. A. 611; In re Pierce (C. C. A., 8th Cir.) 19 Am. Bankr. Rep. 664, 157 Fed. 757, 85 C. C. A. 14; Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093.

The fourth clause of the contract is mostly relied upon in support

of the position that it was a conditional sale. By virtue thereof undoubtedly on the 1st day of each month all notes and accounts for wagons sold on time became the property of the bankrupt. The bankrupt at that time had to account for all goods sold during the preceding month, and for such as were sold on time he could settle to the extent of $100 by executing his four months' note without interest. But this did not have the effect of making a sale of such goods as had not been sold. In case of Parlett v. Blake (C. C. A., 8th Cir.) 26 Am. Bankr. Rep. 25, 188 Fed. 200, 110 C. C. A. 72, 39 L. R. A. (N. S.) 620, it was assumed that an agency contract, containing a provision that at the expiration of its term the agent should buy all goods not theretofore sold at the then current prices, was not a sale contract before the expiration of the term. It became such only upon the expiration of the term as to goods then unsold. So here this contract, otherwise an agency contract as to goods not sold, is not made a sale contract as to them because on the 1st day of each month it became a sale contract as to the proceeds of goods sold during the preceding month on time. I think, however, that the petitioner's right is limited to the unsold goods. He has none as to the proceeds of goods sold because of this fourth clause.

The order of the referee is reversed, with directions to allow petitioner the unsold goods claimed by it.