WILSON-MOLINE BUGGY COMPANY, Respondent,
v. CHRIS PRIEBE, Appellant.

Kansas City Court of Appeals, February 4, 1907.

1. **FOREIGN CORPORATIONS: Carrying on Business: Agent.** The act requiring resident foreign corporations to take out a license to do business in this State applies only to those corporations which establish themselves in this State and transact business here through the medium of agents and not to corporations who have traveling salesmen or to an isolated or casual business.

2. **————: Contract With Agent: Sales: Bailment.** A contract between a foreign corporation and certain parties in this State is held to be a bailment with agents, for the following reasons: (1) The reservation by the plaintiff of the title to the property; (2) The absence of any mutual intention that the local agent shall become the owner of the property at any time or in any event; (3) Obligation of a local agent not to pay for the goods as upon a purchase made by him but only to pay for goods disposed of by him in the course of the relation.

(4) The implied obligation of the local agent to restore to the foreign corporation the goods remaining in his hands at the end of the relation;

3. ———: ———: Admissions of Local Agent: Consideration. Certain admissions of the local agent as to the character of the contract with a foreign corporation are held insufficient to sustain a cause of action, since they were without consideration.

Appeal from Buchanan Circuit Court.—*Hon. Chesley A. Mosman,* Judge.

AFFIRMED.

*James W. Boyd* for appellant.

Submitted argument.

*Allen, Nichols & Neville* for respondent.

Submitted argument.

JOHNSON, J.—The amended petition, on which this cause was tried, contains two counts. In the first, plaintiff alleges that it "consigned to and deposited with defendant" certain buggies and other vehicles which defendant, a carriage dealer and repairer, agreed to revarnish and otherwise to repair. Further, defendant agreed to keep the property fully insured for the benefit of plaintiff. Performance of this agreement is alleged, also the subsequent destruction of the property by fire, the collection of the insurance thereon by defendant, and his failure and refusal to pay it over to plaintiff.

In the second count, the contract is pleaded as in the first, but it is alleged that defendant failed and neglected to insure the property for plaintiff's benefit and the cause of action asserted is founded on this breach of the contract.

The original petition contained no other cause of action than that which was afterward pleaded in the

first count of the amended petition. Defendant by proper and timely motion assailed the right of plaintiff thus to amend the petition and now complains of the action of the trial court in overruling his motion, but, in the view we take of another phase of the case, it is not necessary to determine the questions of pleading raised since our conclusion requires that the judgment recovered by plaintiff be reversed without being remanded.

Plaintiff is a corporation created under the laws of Illinois. It is engaged in the business of manufacturing and selling carriages and like vehicles and its principal office and factory are in Moline, Illinois. Defendant is a retail dealer in such goods at St. Joseph and as a part of his business conducts a repair shop. For some time prior to the beginning of business relations between plaintiff and defendant, the McFarland Carriage Company, another retail dealer in St. Joseph, was handling goods manufactured by plaintiff under an agreement similar to that afterwards made by plaintiff with defendant. · Becoming dissatisfied with the McFarland Carriage Company's manner of doing business, plaintiff in the fall of 1903 decided to make a change and demanded possession of its goods on deposit with that concern. The demand being refused, plaintiff recovered immediate possession of the property in a replevin action which it brought for that purpose in the circuit court of Buchanan county. The value of the goods recaptured, taken at plaintiff's list prices, amounted to $3,900. Plaintiff then delivered the goods to defendant under an oral agreement in substance as follows: Plaintiff retained the title to the property. Defendant was to house and take care of it without charge and sell at retail in the regular course of business. He was under no obligation to pay for any vehicle he did not sell, but, when he made a sale, was required to pay to plaintiff the price at which the vehicle was listed to him by plaintiff. He could sell at any price he chose and the excess he obtained over the

invoice price of an article belonged to him as his compensation and profit. He was to conduct the business and make credits and collections in his own name. Plaintiff claimed no interest in the proceeds of sales, but, as stated, defendant became bound to pay for vehicles when he sold them. On the subject of insurance, defendant agreed to carry at his expense insurance to the amount of $1,400 for the benefit of plaintiff and plaintiff at once procured at his own expense a policy in the sum of $2,500. Defendant's field of operation was the city of St. Joseph. Plaintiff employed a travelling salesman named Jackson, who had assisted the McFarland Carriage Company in selling the goods and whose services were transferred to defendant. This salesman made trips to nearby towns. Sales made by him on such trips were for the account of plaintiff and the orders were filled from the factory, but in instances where the purchaser was in a hurry for the vehicle orders were filled out of the stock in defendant's custody and in such cases defendant received no commission, but was paid a "transfer charge" of seventy-five cents. Sales solicited by Jackson in St. Joseph were for the account of defendant.

In the following June, plaintiff's manager came to St. Joseph and informed defendant that plaintiff desired to transfer the stock to the St. Joseph Buggy Company, another retail dealer. Defendant made no objection and delivered to plaintiff all of the vehicles in his custody except a number that had become shopworn and were in need of repair. At plaintiff's request, he retained them and agreed to repair them at plaintiff's cost and sell them under the terms of the prior agreement. Plaintiff contends that defendant further agreed to insure them at their full value. The vehicles were afterwards destroyed in a fire that occurred at defendant's place of business. Plaintiff adduced evidence tending to show that defend-

ant, after the fire when pressed for settlement, acknowledged his agreement to insure and his liability thereunder and agreed to reimburse plaintiff when he collected his insurance.   Many of these facts are denied by defendant, but the issues of fact were resolved by the jury in favor of plaintiff and in our discussion we will assume as proven the version of facts most favorable to the causes of action asserted.

It was shown by defendant and conceded by plaintiff that the latter has not complied with the laws of this State regulating the right of foreign corporations to do business therein, but it is argued by plaintiff that this fact is without effect on its right to maintain the present action because the facts detailed show that it was not transacting business in this State within the meaning of the statute.   [R. S. 1899, secs. 1024-1027.]   The right of corporations created under the laws of other States to send itinerant salesmen into this State to solicit and transact business without complying with the provisions of the laws under consideration is expressly recognized in section 1025, supra, and this exception indicates a legislative purpose not to interfere with the free conduct of interstate commerce, but only to require those foreign corporations which seek to establish and maintain some part of their enterprise within the State and which therefore expect to avail themselves of the benefit and protection of its laws and the use of its courts to submit themselves to the burdens imposed by its laws on domestic corporations of like character. Therefore, in the use of the term "to transact business in this State reference plainly is had to business operations of the corporation carried on within this State through the medium of agents established therein and which are continuous or of some duration, and not to the operations of travelling salesmen nor to isolated or casual business transactions.

In Blevins v. Fairley, 71 Mo. App. 259, we held

"that the act applied only to those corporations which established themselves here as resident foreign corporations and transacted business and did not apply to foreign corporations not established or resident in this State." This construction of the statute is supported by the decisions in this State. [Steam Heating Co. v. Gas Fixture Co., 60 Mo. App. 148; Williams v. Scullin, 59 Mo. App. 30; Frick v. Marshall, 86 Mo. App. 463; Woolen Mills v. Edwards, 84 Mo. App. 448; Trower Bros. Co. v. Hamilton, 179 Mo. 205; Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404.] And by those in other jurisdictions. [John Deere Plow Co. v. Wyland, 2 American & English Annotated Cases, and authorities cited in note.]

Next in logical order is the question of the effect on contracts made in this State by a "resident foreign corporation," which has not complied with the statutory provisions. In the case of Tri-State Amusement Company v. Amusement Company, supra, that subject was exhaustively considered by the Supreme Court and the conclusion reached that the prohibition of the statute "is as effective to make a contract entered into by such foreign corporation in this State void as if the statute had in terms declared such contracts to be void." And further it was held that a subsequent compliance with the statute by the corporation would not serve to resuscitate the contract nor to confer any right of action thereon in the courts of this State in favor of the corporation. [Erhardt v. Robertson Bros., 78 Mo. App. 404.] It is apparent from what has been said that the real status of plaintiff in this State at the time when it entered into the contract with defendant now in controversy is a subject of vital concern. If it was a "resident foreign corporation" within the definition we have given of that term, the action must fail. If it was not, then its failure to comply with the statutory provisions relat-

ing to foreign corporations is without effect on its right to maintain the action.

Should it be said that the relation between plaintiff and the McFarland Carriage Company and later that between plaintiff and defendant were that of principal and agent, then it is quite clear that plaintiff engaged in business in the State of Missouri with a resident agent in charge. It brought its goods into this State to be sold in the general market and the transactions cannot be regarded as isolated or casual, but must be considered as the indubitable manifestation of a purpose on the part of plaintiff to maintain a local mart for the disposal of its product, and consequently they became an integral part of the very enterprise plaintiff was incorporated to conduct. [United States Rubber Co. v. Shoe Co., 132 Fed. 398; Commonwealth v. Parlin, etc., Co. (Ky.), 80 S. W. 791; Osborne & Co. v. Shilling (Kan.), not yet reported.] But, in effect, it is argued by plaintiff that its relations to the McFarland Carriage Company and defendant were not those of principal and agent but of vendor and vendee: that the transactions were conditional sales made at its office in Moline and that, should they be held to be Missouri contracts, nevertheless they should be treated as isolated transactions.

The hypothesis on which this argument is built being unsound, there is no need to discuss the questions arising from it. The transactions in question were not conditional sales, but each was a bailment of the subject of the agreement. The rule applicable is well expressed by SANBORN, Circuit Judge, in the case entitled "In re Columbus Buggy Co.," 143 Fed. Rep. 859. "A contract between a furnisher of goods and the receiver that the latter may sell them at such prices as he chooses; that he will account and pay for the goods at agreed prices; that he will bear the expense of insurance, freight, storage and handling; and that he will

hold the unsold merchandise subject to the order of the furnisher, discloses a bailment for sale and does not evidence a conditional sale. . . . The fact that such a contract provides that the difference between the agreed prices of the accounting and the selling prices is to recompense him for insurance, storage, commission and expenses does not constitute the contract an agreement of sale. It still lacks the obligation of the receiver to pay a purchase price for the goods and the obligation of the furnisher to transfer the title to him for that price." [Weir Plow Co. v. Porter, 82 Mo. 23; Norton v. Melick, 97 Iowa 564; Lenz v. Harrison, 148 Ill. 598; Sturm v. Baker, 150 U. S. 312; Bank v. Benedict Co., 74 Fed. Rep. 182; Deere Plow Co. v. McDavid, 137 Fed. 802; In re Smith & Nixon Piano Co. (C. C. A.), Eighth Circuit (not yet reported) ; Potter v. Roller Mill Co., 101 Mo. App. 581; In re Galt, 120 Fed. Rep. 64; Bank v. Goodyear, 90 Ga. 711; National Cordage Co. v. Sims, 44 Neb. 148; Harris v. Coe, 71 Conn. 157.]

Plaintiff would have it appear that defendant was under no obligation to restore at the end of their relation the unsold vehicles and says that when it demanded the goods of defendant which it afterwards turned over to the St. Joseph Buggy Co., defendant had the option of complying with the demand or of keeping the goods. In other words, plaintiff seeks to present defendant as the conditional owner of the goods, but its every act negatives any such conclusion. Under a similar arrangement with the McFarland Buggy Co., plaintiff when it desired to terminate that agency asserted in court its ownership of the goods; the demand on defendant to surrender the salable unsold goods in his possession unquestionably was intended as the assertion of a right and not as a mere request, and finally this action is not for the recovery of the purchase price of goods which defendant bought and agreed to pay for but is based on the theory that defendant as the custo-

dian of plaintiff's property failed to perform his agreement with reference to insuring it. These conceded facts make plaintiff's claim that defendant is his vendee exceedingly tenuous, but we can ignore them entirely and decide against the contention on another ground.

The admitted absence from the agreement of any obligation on the part of defendant to pay for vehicles remaining in his possession at the end of the bailment implied an agreement on his part to restore such goods to plaintiff. A simple and instructive example illustrating the principle is found in the case of McCullough v. Porter, 4 Watts & S. (Pa.) 177. "Were I to put my horse in the custody of a friend to be sold for a designated sum with permission to retain whatever could be got beyond it, it would not be suspected that I had ceased to own him in the meantime or that my friend would not be bound to return him even without a stipulation should he have failed to obtain the prescribed price." The fact that defendant was permitted to conduct the business of selling the goods in his own name is not an uncommon incident of factorage agreements and the further fact that he assumed the burden and risk of extending credit to customers cannot operate to classify the contract as one of sale for the reasons, if for no other, that his obligation to pay plaintiff for a vehicle arose from the act of selling it and became immediate on such happening. In a sense, he was compelled to account to plaintiff for the proceeds of each sale as for one made for cash. Selling on credit was a matter of his own choice entirely. He was not bound to do it by his contract with plaintiff and, if he chose to extend such accommodation to customers, that was made a matter of his own concern. Plaintiff, relying on the solvency of its agent and on his agreement to pay for goods as he sold them, could suffer him to give credit on his own responsibility without in anywise altering the nature of the transaction between them.

123 App—34

The elements of the contract, which together indelibly stamp the transactions with the characteristics of a bailment for sale, thus may be summarized:

1st. The reservation by plaintiff of the title to the property.

2d. The absence of any mutual intention that defendant should become the owner of the property at any time or in any event.

3d. The obligation of defendant not to pay for the goods as upon a purchase made by him, but only to pay for goods disposed of by him in the course of the relation.

4th. The implied obligation of defendant to restore to plaintiff the goods remaining in his hands at the end of the relation. See authorities supra.

The conclusion is irresistible that plaintiff by means of its factors had established and was conducting in St. Joseph a fixed and stable business for the sale of its wares and thereby had become a resident foreign corporation. This conclusion being founded on admitted facts, the learned trial judge erred in not peremptorily instructing the jury to find for defendant. It may be added that the admissions of liability made by defendant after the loss will not sustain a cause of action in favor of plaintiff, for they have no consideration to support them.

The principles invoked may seem harsh and even unjust, for one result of their application is to relieve the contract breaker from the burden of the obligation he agreed to assume, but their severity is more apparent than real. The courts of the State are open to foreign corporations that comply with the law. Those that do not have their own remissness, not the laws, to blame for the penalties suffered.

The judgment is reversed. All concur.