MITCHELL WAGON CO. v. POOLE et al.

In re WEST.

(Circuit Court of Appeals, Sixth Circuit. October 6, 1916.)

No. 2793.

1. SALES ⬯464—CONDITIONAL SALES—VALIDITY.

A conditional sale, whereby the seller reserves title, is invalid under Tennessee laws.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1352; Dec. Dig. ⬯464.]

2. SALES ⬯304—RESERVATION OF TITLE—VALIDITY.

Where on absolute sale the seller reserves a lien, the lien is of no avail unless recorded.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 869; Dec. Dig. ⬯304.]

3. SALES ⬯7—SALE DISTINGUISHED FROM CONTRACTS OF AGENCY.

That a contract contemplated and provided for a purchase by one appointed an agent for sale does not prevent it being an agency to sell until such purchase.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 16, 17; Dec. Dig. ⬯7.]

4. SALES ⬯7—SALE DISTINGUISHED FROM AGENCY FOR SALE—CONSTRUCTION.

A contract recited that petitioner appointed the bankrupt its agent for the sale of its farm wagons, declaring that petitioner should furnish wagons at fixed prices, and provided that wagons sold during each month following the date of shipment should be settled for the first day of the following month for cash, or by the bankrupt's note due in four months, and a discount of 5 per cent. on all wagons settled for in cash within 12 months from date of shipment was allowed. It was agreed that the bankrupt should store and pay the freight on all wagons, etc., and, in event of failure to sell wagons shipped, should at the expiration of 12 months from the date of shipment settle therefor either by paying for the wagons or giving a note for the purchase price or storing them for petitioner. Held that, despite further provisions contemplating payment for wagons shipped in case the bankrupt should dispose of his business and the agency should not be transferred to his successor, and authorizing the petitioner in case of violations to require transfer of all wagons in the bankrupt's possession, free from claim for reimbursement for freight, the contract, though it contemplated an ultimate sale to the bankrupt in certain contingencies, was one of agency and not of sale, so that a reservation for title in the petitioner is binding and on the agent's bankruptcy may be asserted.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 16, 17; Dec. Dig. ⬯7.]

5. CORPORATIONS ⬯642(1)—FOREIGN CORPORATIONS—"DOING BUSINESS" WITHIN STATE.

For a foreign corporation to appoint an agent for sale, as a factor, does not constitute "doing business" within the state so as to preclude reliance on the contract, though the charter of the corporation was not registered so as to entitle the corporation to do business in the state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2520, 2521; Dec. Dig. ⬯642(1).

For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

Appeal from the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In the matter of the bankruptcy of J. B. West, doing business as J. B. West & Co. Intervening petition by the Mitchell Wagon Company against George H. Poole and E. E. Houck, trustees in bankruptcy. From a decree denying the petition, petitioners appeal. Reversed, with directions.

A. W. Ketchum, of Memphis, Tenn., for appellant.

Frank S. Elgin, of Memphis, Tenn., for appellee.

Before KNAPPEN and DENISON, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This is an appeal from a decree of the lower court denying the intervening petition filed by the appellant the Mitchell Wagon Company, a Wisconsin corporation, in the bankruptcy proceeding of J. B. West, doing business under the name of J. B. West & Co. at Memphis, Tenn., begun December 1, 1914, in which it set up a claim to certain wagons shipped by the appellant to the bankrupt under a contract dated May 25, 1914, a copy of which is set forth in the margin,[1] and in his hands at the time the bankruptcy proceeding

---

[1] Agent's Commission Agreement.

This agreement, made and entered into in duplicate this 18th day of May, 1914, by and between Mitchell Wagon Company of the city of Racine, and state of Wisconsin, party of the first part, and J. B. West & Co., of Memphis, county of Shelby, state of Tennessee, party of the second part, witnesseth:

That the said Mitchell Wagon Company, for and in consideration of the covenants and agreements hereinafter named, do hereby appoint said party of the second part their agent for the sale of their farm wagons, from the date hereof until July 1, 1915, in and for the following territory, to wit, Memphis and vicinity, in the state of Tennessee, and in no other place or places except as herein provided, without special permission in writing.

The said Mitchell Wagon Company agree to furnish the said party of the second part on board cars at Racine, Wis., the wagons this day ordered as described on order blank hereto attached, at the following prices:

Farm Wagons with regular wheels.....................37½ per cent.
Regular tire, seats and brakes. ....................37½ per cent. discount from their list prices in price list applying to catalog No. 70. Extra charge for wider or thicker tire, 37½ per cent. discount from their list prices in price list applying to catalog No. 70.

Farm wagons, extras for repairs, 37½ per cent. discount from their list prices in price list applying to catalog No. ——; 2¾ wagons with beds to be 37½ and 5 per cent. All wagons f. o. b. Memphis, Tennessee.

In lieu of discount from list prices, all wagons are to be settled for at net prices named on order blank hereto attached or such prices as are named on other side of this sheet.

The same to be sold and accounted for to the said Mitchell Wagon Company in cash or notes as follows:

All wagons sold during each month following date of shipment to be settled for the first day of each month following date of sale, in cash or by said second parties' note due in four months, drawing interest at the rate of six per cent. per annum from date, payable at the nearest bank on with exchange on Chicago or New York. All such settlements to be accompanied by a statement showing wagons on hand unsold.

Cash discount of five per cent. will be allowed on all wagons, settled for in cash within twelve months from date of shipment, no cash discount to be allowed on settlement in cash after twelve months from date of shipment.

It is agreed that after the first shipment under this contract, the prices

was brought. By an indorsement on the margin of the contract it was provided that settlements for wagons sold should be made quarterly, instead of monthly, except that the first settlement should be made

on all future shipments of wagons shall be subject to such changes as may be occasioned by the advance or decline in material or labor.

The said Mitchell Wagon Company warrant all their wagons as per printed form of warranty in catalog.

The said party of the second part agrees to receive, store, pay freight, and keep under cover, in good condition and fully insured at their own expense, all wagons sent them until sold or ordered away by the party of the first part as herein provided; to pay all taxes on wagons on hand, should any assessment be made; to make all reasonable efforts to sell such wagons and not sell or assist in the sale of any other wagon or wagons, except those furnished by the party of the first part under this contract.

The party of the second part further agrees to sell all wagons shipped them under the within agreement within twelve months from date of shipment, and in case of any failure or neglect to do so, agrees to settle at the expiration of that time, or at any time thereafter when called upon to do so for all wagons and parts of wagons remaining on hand unsold at prices hereinbefore stated in the following manner, to wit: At the option of Mitchell Wagon Company to either pay the cash for said wagons or to give their note due in four months with six per cent. interest from date, payable to Mitchell Wagon Company or order, or to store said wagons in good order, free of charge, subject to the order of said Mitchell Wagon Company.

If the said party of the second part at any time during the continuance of the within contract, sell or close out their business they agree to purchase all wagons remaining on hand unsold, paying cash therefor, or transfer same to their successors on such terms as will be satisfactory to the party of the first part without cost to said party of the first part.

If the terms of contract are complied with and the said party of the first part should order one or more or the whole of said wagons reshipped or turned over to other parties, the party of the second part will be entitled to the actual freight and drayage only that they may have been paid out on each of said wagons, which is to be in full of all charges; but if from any violation of the contract the said party of the first part conclude they want possession of such wagons and parts of wagons as are on hand with the said party of the second part, it is agreed that all such wagons and parts of wagons on hand are to be transferred to the said party of the first part free of all charges for freight and drayage that may have been paid on same by the said party of the second part.

It is further agreed by and between the parties hereto that the ownership of all wagons furnished under this or any previous contract, or their proceeds, shall remain in the Mitchell Wagon Company until settlement shall have been made for them by the said party of the second part, as provided in contract under which they were shipped.

If from any cause whatever, the said Mitchell Wagon Company are unable to furnish the wagons ordered, they shall not be held liable for any commission or damage whatsoever; and it is further agreed that this appointment be and the same is hereby made revocable at the pleasure of the said party of the first part.

No verbal agreement pertaining to the within contract, other than as specified herein, will be recognized.

Witness our hands the day and year first above written:

Mitchell Wagon Company,
By J. K. Hemphill, Agent.
J. B. West & Co.

Taken by J. K. Hemphill, Agent. Subject to the approval of Mitchell Wagon Company.

Approved. Racine, Wis., May 25, 1914.

Mitchell Wagon Company,
T. A. Mitchell, Treasurer.

at the end of six months. At the time the bankruptcy proceeding was brought but one shipment had been made under the contract and six months had not elapsed from the time thereof.

[1-4] The right of appellant to the relief sought by it depends upon whether the contract under which the wagons were shipped was a sale, conditional or absolute with lien for the purchase price, or an agency to sell. If it was a conditional sale, appellant is not entitled thereto, because such a sale in Tennessee is void as contrary to the public policy of the state. Coweta Fertilizer Co. v. Brown, 163 Fed. 162, 189 C. C. A. 612. If it was an absolute sale with such lien, the lien is of no avail, for want of record. It is only in case the contract was an agency to sell that appellant is entitled to such relief. The fact that it contemplated and provided for a purchase of the wagons by the bankrupt in the course of the transaction did not prevent its being an agency to sell until such purchase. In Mechem on Sales, § 45, it is said:

"It is, moreover, possible that the relations of the parties may change or be susceptible of change during the progress of the transaction. Thus there may be the creation of a genuine agency to sell, but coupled with it the right of the agent to himself become the purchaser if he so desires or a stipulation that in a certain contingency—as if he sell at a different time or price than fixed—he shall or may be treated as a purchaser. In such a case, if the contingency contemplated occurs, the transaction will cease to be an agency to sell and will become a sale."

And in his work on Agency (2d Ed.) § 2499, the same author said:

"It is not necessarily inconsistent with the idea of a present agency that the contract shall provide that, at the close of the season or the happening of some other event, the title to the goods remaining unsold shall, at the option of the consignee, then vest in the latter who shall thereupon become responsible for the price."

The contract here provided for the bankrupt becoming purchaser in several contingencies. One was when he sold the wagons. This follows from the fact that he had a right to sell on such terms as to price and time of payment as he liked, but was bound, if he sold, to pay appellant for them at a fixed price and a fixed time, and the proceeds of the sale were to be his. A sale by him was, in effect, a purchase and a resale.

In Ex parte White, L. R. 6 Ch. App. 397, Mellish, J., said:

"It appears to me that the real question is: When Nevill sold the goods, did he sell them as the agent of Towle & Co., so as to make Towle & Co. the vendors, and the persons to whom he sold, purchasers from Towle & Co.? Or did he sell on his own account, so as to create the relation of purchaser and vendor between himself and Towle & Co., and again the relation of vendor and purchaser between himself and the persons to whom he sold? Now, it is said that he was a del credere agent, and no doubt it requires a very minute examination of what the course of business is, to distinguish between a del credere agent, and a person who is an agent up to a certain point, that is to say, until he has sold the goods, but who, when he has sold the goods, has purchased them on his own credit and sold them again on his own account. And no doubt persons may suppose that their relationship is that of principal and agent, when in point of law it is not. It is quite clear that Nevill, if he sold these goods, was to pay Towle & Co. for them, at a fixed price—that is to say, a price fixed beforehand between him and them—and at a fixed time. Now, if it had been his duty to sell to his cus-

tomers at that price, and to receive payment from them at that time, then the course of dealing would be consistent with his being merely a del credere agent, because I apprehend that a del credere agent, like any other agent, is to sell according to the instructions of his principal, and to make such contracts as he is authorized to make for his principal; and he is distinguished from other agents simply in this, that he guarantees that those persons to whom he sells shall perform the contracts which he makes with them; and therefore, if he sells at the price at which he is authorized by his principal to sell, and upon the credit which he is authorized by his principal to give, and the customer pays him according to his contract, then, no doubt, he is bound, like any other agent, as soon as he receives the money to hand it over to the principal. But if the consignee is at liberty, according to the contract between him and his consignor, to sell at any price he likes, but is to be bound, if he sells the goods, to pay the consignor for them at a fixed price and at a fixed time, in my opinion, whatever the parties may think, their relation is not that of principal and agent. The contract of sale which the alleged agent makes with his purchasers is not a contract made on account of his principal, for he is to pay a price which may be different from those fixed by the contract. He is not guaranteeing the performance, by the persons to whom he sells, of their contract with him, which is the proper business of a del credere agent; but he is to undertake to pay a certain fixed price for those goods, at a certain fixed time, to his principal, wholly independent of what the contract may be which he makes with the persons to whom he sells; and my opinion is that, in point of law, the alleged agent in such a case is making, on his own account, a contract of purchase with his alleged principal, and is again reselling."

Another was at any time within 12 months from the date of shipment at his option by paying the fixed price, in cash, when he would be entitled to 5 per cent. discount. There were two other contingencies in which the bankrupt agreed to purchase at the appellant's option. One was at the expiration of the selling period of 12 months and the other in case he sold or closed out his business. The bankrupt agreed, in either contingency, at appellant's option, to purchase all the wagons then unsold. Until then a purchase by the bankrupt in one or the other of these four contingencies, what was the relation between appellant and the bankrupt? Was is that of seller and buyer, or principal and agent? The contract is entitled "Agent's Commission Agreement," and its initial provision is that the bankrupt is thereby appointed appellant's "agent for the sale of their farm wagons" for the time and in the territory thereby prescribed. But this is not conclusive. Indeed, it may be of little weight, as it may turn out to be a pretense. This apart, however, it would seem that there can be no question that the relation between them was that of principal and agent, and not of seller and buyer. This follows from the facts that there was no agreement on the part of the bankrupt to pay the prices fixed for the wagons—it was not contemplated that he should pay for them except upon his becoming a purchaser in one of the contingencies named—and that the appellant had the right to demand a return of the wagons at any time. That it had such right does not follow from the provision that, until a bankrupt so becoming a purchaser, the ownership of the wagons should remain in it. This is a provision characteristic of a conditional sale contract. Nor should the provision that the appointment of the bankrupt as agent was revocable at the pleasure of the appellant be stressed. The contract contemplated other shipments under it, and the purpose of the provision may have been to confer the right of withholding fur-

ther shipments rather than that of demanding the return of wagons shipped. The existence of such a right is to be gathered from the provision that the bankrupt should be entitled to reimbursement for freight and drayage paid out by him if appellant should order the wagons reshipped or turned over to other parties when he had complied with the terms of the contract, but not if appellant concluded it wanted possession because of any violation thereof, to which the provision that the bankrupt was to pay all expenses until the wagons were sold or "ordered away" looked. This provision rather presupposes that the bankrupt had such right than confers it. But that which is presupposed by a contract is as much a part of it as that which is expressly provided for therein. This provision may be thought to be a harsh one. But there is no gainsaying that it is there.

The relevant decisions in other jurisdictions are very numerous—so numerous as to forbid an attempt to consider them. Note, however, may be taken of those upon which the parties herein rely to sustain their respective contentions. Of those cited by appellee, note need be .taken only of these two, to wit, Arbuckle v. Kirkpatrick, 98 Tenn. 227, 39 S. W. 3, 36 L. R. A. 285, 60 Am. St. Rep. 854, and In re Rabenau (D. C.) 118 Fed. 471, the former of which was relied on by the lower court. The others are ,clearly not in point. In the Tennessee case Judge Wilkes, in enumerating the more prominent features of the contract there involved, which were thought .to characterize it as one of sale and not of agency, put this at the front:

"It will be noted that under no circumstances were any goods ever to be returned to Arbuckle & Co.; all must be paid for in 60 days, whether sold or not. There is no stipulation to buy at the expiration of 60 days, but the contract clearly contemplates a payment without further bargain when that time arrives, and implies a present sale, on a credit of 60 days."

There is no such feature as that in this case. In the Rabenau Case it is sufficient to note that the transaction there was "duplex." There was a "doubling of contracts," one of which was a conditional sale and the other intended to be an agency to sell contract. Judge Philips held that the purpose of this was to evade the recording statute. Possibly something he said may be in point here, but it was said under the shadow of the two-faced character of the transaction. ,

The appellant cites these decisions of the Appellate Court of the Seventh Circuit, to wit, In re Galt, 120 Fed. 64, 56 C. C. A. 470, and In re Flanders, 134 Fed. 560, 67 C. C. A. 484; and these by the Appellate Court of the Eighth Circuit, to wit, John Deere Plow Co. v. McDavid, 137 Fed. 802, 70 C. C. A. 422, In re Columbus Buggy Co., 143 Fed. 859, 74 C. C. A. 611, Franklin v. Stoughton Wagon Co., 168 Fed. 857, 94 C. C. A. 269, and this by Judge Sanford of the Eastern and Middle Districts of Tennessee, In re Harris & Bacherig (D. C.) 214 Fed. 482, in each of which the contract involved was held to be an agency to sell contract. The Flanders, John Deere Plow Co., and Columbus Buggy Cases are unlike this, in that the contract did not contemplate that the agent should become a purchaser in any contingency; and the Galt, Stoughton Wagon Co., and Harris & Bacherig Cases are like· it only in that the contract contemplated that he would become

a purchaser in one contingency only and that at the option of the principal at the end of the selling period. It may not be amiss, however, to quote from the opinions in them as to the test of determining whether a given contract is a sale or an agency to sell. In the Galt Case Judge Jenkins said:

"In a bailment the bailor may require the restoration of the thing bailed, and in a sale, whether absolute or conditional, there must be an agreement, express or implied, to pay the purchase price of the thing sold."

In the Flanders Case, he said:

"The rule by which to distinguish between a bailment and a conditional sale we consider as decided in the case of In re Galt, 120 Fed. 64 [56 C. C. A. 470.] We there held that, if the sender has a right to compel return of the thing sent, it is a bailment, and not a [conditional] sale, and that in a sale there must be an agreement, express or implied, to pay the purchase price."

In the John Deere Plow Co. Case, Judge Riner said:

"The plow company had the right, under the contract, to require the goods returned, and in this it lacks one of the necessary elements of a contract of sale, namely, to pay money, or its equivalent, for the goods delivered, with no obligation to return."

In the Columbus Buggy Co. Case, Judge Sanborn said:

"The power to require the restoration of the subject of the agreement is an indelible incident of a contract of bailment."

In the Stoughton Wagon Co. Case, Judge Riner said:

"We think the wagon company retained full control of the disposition to be made of the wagons, in that it could direct the goods returned to the house and shipped elsewhere as desired, and in this it lacks one of the necessary elements of a contract of sale, namely, to pay money or its equivalent for the goods delivered with no obligation to return."

And in the Harris & Bacherig Case, Judge Sanford said:

"Where, as in the present case, the consignment contract expressly reserves title in the consignor, with the right to demand the return of the unsold goods, and merely gives him an option, upon the happening of certain conditions, to change the contract into one of sale as to the unsold goods, the contract remains until this option is exercised by the consignor one of consignment merely and not of sale."

The contract here involved, therefore, as to all its characteristics, goes beyond any of the cases cited by either side.

In the case of In re Reynolds (D. C.) 203 Fed. 162, the writer of this opinion had to deal with a case where the contract involved provided not only that the agent at the principal's option should become the purchaser of unsold goods at the end of the selling period, but also that, as to goods sold, the agent on the first day of each month should settle for those sold the previous month, in cash or by his four months' note, which made the proceeds of the sale, up to that time the property of the principal, thereafter the property of the agent, and he held that the contract was an agency to sell.

There is no decision of this court that can be said to be exactly in point. The case of Coweta Fertilizer Co. v. Brown, supra, from Tennessee, was somewhat similar to that of Arbuckle v. Kirkpatrick, su-

pra, which Judge Lurton cited in support of the position taken that the contract there involved was an absolute sale with lien for the purchase price. The receiver of the goods obligated himself to pay a fixed price at a fixed time, and there was no right to a return of the goods. Both sides agreed that the contract was one of sale and not of bailment. The sole difference was as to whether the sale was conditional or absolute, and, if the former, whether the goods could be reclaimed. The cases of Mishawaka Woolen Mfg. Co. v. Westveer, 191 Fed. 465, 112 C. C. A. 109, John Deere Plow Co. v. Mowry, 222 Fed. 1, 137 C. C. A. 539, In re Stoughton Wagon Co., 231 Fed. 676, —— C. C. A. ——, and Walter A. Wood M. & R. M. Co. v. Croll, 231 Fed. 679, —— C. C. A. ——, were from Michigan. In that state a conditional sale is valid and the goods are reclaimable from a holder of a mortgage of record or a trustee in bankruptcy. In each of these cases the contract under which the goods were delivered was a sale. The sole question was whether the sale was conditional or absolute with a lien for the purchase price, in which latter case the lien, for want of record, was subordinate to the right of such holder or trustee. It was held that the sale was absolute with such lien. The main ground for the decision, at least in all but the first one, was that the party to whom the goods were delivered had the right of resale. This right was regarded as inconsistent with ownership in the party who had delivered them as in a conditional sale. It was consistent only with an agency to sell, which it was not claimed to be. Judge Denison, in the John Deere Plow Co. v. Mowry Case, characterized the contract with which it was consistent as "a pro tem. agency or consignment"; "a consignment or an agency to resell up to the time when the vendee became obliged to pay the price and take the title"; and "what was (temporarily and pending the maturing of the sale) a mere consignment or agency." And in a note thereto he distinguished John Deere Plow Co. v. McDavid, supra, from the case in hand, in that the relation created by the contract there involved was that of principal and agent. As the contract here contemplated a resale, it would seem under these decisions that if it could be said that it was a sale at all, it was an absolute sale with lien for purchase price, rather than a conditional one.

The appellees urge the course of dealing between the bankrupt and appellant's predecessor as having bearing on the interpretation of the contract. But assuming that it is relevant, it is not inconsistent with the interpretation of the contract which we have made.

We hold, then, that the contract was an agency to sell, and not a sale, and, as, at the time of the bringing of the bankruptcy proceeding, the bankrupt had not become the purchaser of the wagons then on hand, shipped under the contract in either of the contingencies contemplated thereby, appellant was the owner and entitled to the possession thereof.

[5] The appellees set up a defense to appellant's right to recover its wagons that it was a foreign corporation and had not complied with the statute of Tennessee requiring such a corporation to register its charter before it has a right to do business therein. It is sufficient

answer to this defense to say that the appellant had not violated that statute by doing business in Tennessee. It is not claimed that it did business therein except in so far as the sale of its wagons by the bankrupt as a factor was the doing of business by it. But this is not a doing of business by it in Tennessee within the meaning of the statute. And this has been so held by the Supreme Court of Tennessee, since the hearing below, in the case of Cooper Rubber Co. v. Johnson, 133 Tenn. 562, 182 S. W. 593. And see the case of Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167.

We are therefore constrained to reverse the judgment of the lower court, with direction to sustain appellant's claim.