## CITY OF ATLANTA *et al. v.* YORK MANUFACTURING CO.

1. The Congress of the United States has exclusive power to regulate commerce among the several States; and any attempt by a municipality of a given State to place a burden upon such commerce, in the shape of municipal taxes or otherwise, is illegal.

2. A foreign corporation which has no warehouse, office, or place of business in this State, and which neither incurs nor pays any of the expenses of receiving, handling, storing, or selling its goods in this State, to which it consigns them to its factor, who conducts all the business here, assumes and pays all the expenses of receiving, selling, handling, and storing the goods, and becomes responsible to the foreign corporation for the price of the goods when sold by him, is not " doing business " in this State, within the true meaning of the municipal ordinances of the City of Atlanta levying a license tax of $30 on " agencies, or other business not specially mentioned," etc.; and $30 on "machinery, dealers in or agents for," etc.

3. Where a foreign corporation ships goods to a person within this State on consignment, for sale in his own name, the latter is not

3

the representative nor agent of the foreign corporation; nor is his place of business, which he rents and where he pays all the expenses, and sells such goods in his own name, the place of business of the foreign corporation. Such transaction does not constitute "doing business" within the State by the foreign corporation.

4. The court did not err in granting the interlocutory injunction.

No. 3208.   FEBRUARY 13, 1923.

Injunction. Before Judge Pendleton. Fulton superior court. March 16, 1922.

The City of Atlanta issued an execution against the York Manufacturing Company, a corporation organized and existing under the laws of the State of Pennsylvania, and having its principal office and place of business in the city of York, Pennsylvania, for the sum of $7.50, as for an unpaid license or occupation tax. The York Manufacturing Co. brought a petition against the City of Atlanta and W. E. Harwell, city marshal, to enjoin the enforcement of this execution. On interlocutory hearing an injunction was granted as prayed; whereupon the City of Atlanta and the marshal excepted. It appears from the record that the City of Atlanta has tax ordinances imposing a business or occupation tax, among others, upon "Agencies, or other business not especially mentioned, except such licenses as may hereafter be charged by the mayor and general council, . . $30.00. Machinery, dealers in or agents for, where annual sales are less than $25,000, . . $30.00." The tax was not paid; and the execution was issued for one fourth of the annual tax which the city requires to be paid quarterly. The York Manufacturing Co. alleges as follows: It is a foreign corporation and has no business located within the City of Atlanta; it is engaged in the manufacture of ice-making and refrigerating machinery and apparatus and fittings therefor; and its place of business and its factory are located in the city of York, Pennsylvania. The Southern Construction & Supply Co., hereafter referred to as the Southern Co., is a corporation under the laws of the State of Georgia, and is engaged in the business of selling ice-making and refrigerating machinery and fittings therefor in Georgia and other States, and has and maintains its principal office and place of business at 116 and 118 Central Avenue in the City of Atlanta. In the year 1912 the plaintiff entered into a contract with the Southern Co., a copy of which is attached to the petition. This contract is in force, and the par-

ties thereto are acting under it. From time to time, as ordered by the Southern Co., the plaintiff ships on consignment to the latter company ice-making and refrigerating machinery and ap-. paratus and fittings therefor, and the Southern Co. holds the goods and sells them in Georgia and elsewhere on a commission basis, as provided in the contract. The Southern Co. maintains an office and place of business and warehouse at the above-men-, tioned place in the City of Atlanta for the purpose of selling the goods, and it has complete charge thereof and pays all expenses, and plaintiff has no connection with the business of that company. The latter company maintains its office and place of business for its own purposes and in the conduct of its own business. Plaintiff has no general office and no branch office and no business proper located within the City of Atlanta. Plaintiff has been notified that in the event it fails to pay the amount of the tax at once, it will be required to appear before the City of Atlanta on the charge of conducting business without a license. It is not liable for the tax under the ordinances of the City of Atlanta, and it does not come within the operation of the ordinances; and the effort of the City of Atlanta and its marshal to collect the tax is illegal and contrary to law. The ordinances of the City of Atlanta provide that any person whose duty it shall be to register their business and who fail or refuse to do so may be arrested and brought before the recorder's court, and on conviction be fined a sum not exceeding $100 and costs, or be imprisoned not exceeding thirty days, or both, in the discretion of the court, for each day such business has been done without registering the same, etc. The Southern Co. has already paid the general business license of occupation tax to the City of Atlanta, and neither that company nor its officers, agents or employees are liable to pay the tax sought to be imposed upon plaintiff. Neither the Southern Co. nor its officers, agents, or employees are subject to prosecution on account of the failure to pay the tax so imposed upon plaintiff; and any effort to enforce collection of the tax by prosecution in the re-corder's court of any of these parties would be contrary to law. In the event that the plaintiff fails to pay the tax the marshal of the City of Atlanta will levy upon and sell enough of the plain-tiff's property in the hands of the Southern Co., to pay the illegal tax together with all costs involved in the proceeding; and such

levy and sale would be illegal and without authority of law, and would constitute a trespass and an illegal taking of the property of plaintiff.

The contract between the plaintiff and the Southern Co., above referred to, was executed in the year 1912, whereby the latter company is designated as selling agent for the plaintiff. Under this contract plaintiff agrees to sell to the Southern Co., certain ice-making and refrigerating machinery and apparatus and fittings therefor at market prices, and, as requested, to ship to the Southern Co. on consignment such a stock of machinery as the principal may deem necessary, and to pay the freight and charges thereon " to the store of the agent;" to keep said stock replenished from time to time; to take back such of it as may be found unsalable, and to replace the same with other stock suitable for the market; to keep the stock properly insured, and fill directly from its factory such orders as it may receive from the agent (and as are approved) for such machinery or apparatus as the agent may not have in stock. The principal agrees to pay the agent a commission of five per cent. on the net price of all sales made by it of such machinery to be erected and operated in its territory; etc.

*J. L. Mayson* and *J. M. Wood*, for plaintiffs in error.

*Dorsey, Brewster, Howell & Heyman* and *Mark Bolding*, contra.

HILL, J. (After stating the foregoing facts.) The question to be considered is whether or not the York Manufacturing Company, a corporation under the laws of Pennsylvania, and having its home office in that State, has, under section 21 of the tax ordinances of the City of Atlanta for the years 1921-22 either its business proper or its general or branch offices located within the corporate limits of the City of Atlanta, and is represented by officers or any agent for the purpose of soliciting patronage for the same or for the transaction of any business pertaining thereto. The question presented is one more of fact than of law. Of course if the transactions, if any, of the plaintiff are purely interstate, Congress alone has power, under the Federal constitution, to regulate such commerce. Art. 1, sec. 8, par. 3, of the constitution of the United States (Civil Code of 1910, § 6644). But, under the view we take of this case and the evidence introduced on the interlocutory hearing, which was uncontradicted, the York Manufacturing Co. has no office or place of business in the City

of Atlanta, so as to subject it to the municipal tax sought to be enforced in the present case. Under the evidence in the record, it has no officers or employees in the City of Atlanta or in the State of Georgia. The evidence discloses that the Southern Co. has a place of business at 116 and 118 Central Avenue in the City of Atlanta; it holds a lease of the premises where it does business, and it pays the rent thereon. So far as the record discloses, the York Manufacturing Co. has no connection whatever with the lease of the Southern Co., and has no control or management of its place of business. The latter company has its own officers, agents, and salesmen, and makes its own sales of goods and collects for the same, regardless of whether the goods are purchased directly from the York Manufacturing Co. or are held by it on consignment from that company, or from some other company. It sells to its own customers upon such terms and conditions as it sees proper. It makes its own collections for the goods sold to its customers, and reports monthly to the York Manufacturing Co. The evidence discloses that it sells these goods in its own name and for its own benefit; and for the sale of such goods as are held on consignment from the York Manufacturing Co., the Southern Co. becomes responsible to the former company for the agreed price of such goods. It further appears that no one connected with the Southern Co. is an officer or an agent of the York Manufacturing Co., or has any connection with that company. The Southern Co. pays all of the expenses connected with the sale of the goods held by it on consignment from the York Manufacturing Co., and receives a percentage as agreed upon in the contract as commissions on the sales thus made. It also appears that such goods as are held on consignment, and which are not sold by the Southern Co., are returned to the York Manufacturing Co. When goods are sold by the Southern Co. to purchasers from it, it becomes liable to the former company for the price of such sales, less the commission agreed upon. It also appears from the uncontradicted evidence in the record that the Southern Co. has for a number of years paid the tax required of it by the City of Atlanta, which is imposed upon dealers in machinery.

But it is insisted on the part of the City of Atlanta, that under the foregoing statement of facts the York Mfg. Co. is doing business in the City of Atlanta, within the meaning of the section

of the ordinances set out in substance above, " through its agent, the Southern Co." On the other hand the York Mfg. Co. insists that the Southern Co. has its own place of business and operates the same for its own benefit, and that it has only a contractual relation with the latter company, and is not its agent, but is merely a *factor* or *commission merchant* selling goods of the York .Mfg. Co., on commission, and for others from whom it purchases; and therefore it is contended and argued that the York Mfg. Co. has no place of business and is not doing business within the City of Atlanta, within the meaning of the ordinances of the city which levied a license or occupation tax against those who *are* doing business within its limits. It is also contended on the part of the York Mfg. Co., that, in so far as it may have obtained contracts for the purchase of ice-making and refrigerating machinery for and on behalf of and in the name of the York Mfg. Co., such business is interstate commerce and is not subject to the tax imposed by the City of Atlanta; and that if the ordinances under consideration cover and impose a tax upon such business, the same is a burden upon interstate commerce, and therefore in contravention to the constitution of the United States, pointed out above. In such case, of course, no tax can be levied upon purely interstate business; nor can a tax be levied against the York Mfg. Co. where direct sales are made from the York Mfg. Co. to the Southern Co. That class of business could not constitute doing business by the York Mfg. Co. in the City of Atlanta, within the meaning of the ordinances imposing a tax upon businesses done within the city.

The next class of business which needs to be considered is that known as the consignment business. With reference to such business the uncontradicted evidence of George Braungart, the president of the Southern Co., is: "Under said contract, the York Mfg. Co. consigns to the Southern Construction & Supply Co. the goods referred to in said contract, and the Southern Construction & Supply Co. holds said goods at its place of business in the City of Atlanta, and, from time to time, sells the same to its customers. Goods which are not salable are sent back to the York Mfg. Co. At the first of each month the Southern Construction & Supply Co. sends to the York Mfg. Co. a memorandum of the goods sold for the previous month. These goods are not billed by

the Southern Construction & Supply Co. to the York Mfg. Co.; but, upon receipt of the memorandum report herein referred to, the York Mfg. Co. bills the goods so sold to the Southern Construction & Supply Co., and thereupon holds the Southern Construction & Supply Co. responsible for such goods. As the Southern Construction & Supply Co. sells the goods to its customers, it bills the goods, in its own name, to such customers, and holds the customers responsible to it, the Southern Construction & Supply Co., as the seller. Such customers are held responsible for the payment of said goods to the Southern Construction & Supply Co., and the York Mfg. Co. holds the Southern Construction & Supply Co. responsible for the goods so sold by the latter to the latter's customers. If the Southern Construction & Supply Co. fails to collect for the goods sold to its customers, it is nevertheless held responsible for the goods by the York Mfg. Co., and is required to pay the York Mfg. Co. for them. The goods referred to in this class of business are goods handled by the Southern Construction Co. on consignment. In such cases the York Mfg. Co. has nothing whatever to do with the contracts between the Southern Construction & Supply Co. and its customers relating to the sale of the goods." There is much other testimony along the same line, going into details, by Mr. Braungart, and by Mr. Hilliker, the secretary of the Southern Construction & Supply Co. It may be added that the latter testified, among other things, that the Southern Construction & Supply Co. has at its place of business no stationery of the York Mfg. Co.; that all of the billheads and letterheads are in the name of the Southern Construction & Supply Co., and that the York Mfg. Co. has no interest whatever in the business of the Southern Construction & Supply Co. From the above, and other evidence in the case, we are of the opinion that the Southern Construction & Supply Co. is not the agent of the York Mfg. Co.; and that the latter is not doing any business in the City of Atlanta, within the meaning of the tax ordinance of that city under consideration.

In the case of Butler Shoe Co. v. U. S. Rubber Co., 156 Fed. 1, 2, 3 (84 C. C. A. 167), it was held: "Interstate commerce in sound and well-recognized articles of commerce must be free, and any prohibition, obstruction, or burden of it by a State by any method is unconstitutional. Such commerce may not be regulated

by a State at all. The exclusive power to regulate commerce among States is vested in the Congress." " A foreign corporation which has no warehouse, office, or place of business, and which neither incurs nor pays any of the expenses of receiving, handling, storing, or selling its goods, in a State to which it consigns them to its factor, who conducts all the business there, assumes and pays all the expenses of receiving, selling, handling, and storing the goods, is not doing business in the latter State, within the true meaning of the statutes relative to the admission of foreign corporations." In the same case it was also stated and held as follows: " A manufacturing corporation of New Jersey made annual contracts with a corporation in Colorado, engaged in the wholesale business in that State, whereby the former agreed to send from its mill and warehouse in Eastern States to the latter in Colorado, upon its orders, rubber boots, shoes, and other rubber goods during the year for sale, and the latter agreed to receive, to store, and to sell them in its name as consignee, and to pay to the former for the goods which the latter sold certain agreed prices, which was so much less than its selling prices to its customers that it secured thereby the expenses of carrying on the business and a liberal commission. The contracts provided that the latter was appointed the agent of the former to sell the goods, that the latter should make advances when requested, that to the amount of its profits it guaranteed the sales, that the goods and their proceeds, until the latter paid the agreed prices, should be the property of the former, and that the latter assumed the risk of the receiving, storing, handling, and selling. The manufacturing corporation shipped the goods as agreed. It had no office, warehouse, or place of business in Colorado, and it neither incurred nor paid any of the expenses of receiving, storing, and selling the goods. The Colorado corporation ordered, received, stored, and sold the merchandise at its own expense, in consideration of the factorage secured to it by the contracts. *Held*: (*a*) The agreements were factorage contracts, and they were not contracts for conditional sales. (*b*) The making of the contracts and their performance by the New Jersey corporation were transactions of interstate commerce, which could not be lawfully prohibited or trammeled by the legislature or action of the State of Colorado." The case just cited is substantially in its facts identical with the case at

bar, and has been cited with approval and followed by other courts, both State and Federal. A petition for a writ of certiorari to the U. S. Circuit Court of Appeals for the fifth circuit, in the above-stated case, was denied by the Supreme Court of the United States. Butler Shoe Co. v. U. S. Rubber Co., 212 U. S. 577 (29 Sup. Ct. 686, 53 L. ed. 658). See also the following cases cited in the decision referred to: Allen v. Tyson, Jones Buggy Co., 91 Tex. 22 (40 S. W. 393) ; Gunn v. White Sewing Machine Co., 57 Ark. 24 (20 S. W. 591, 18 L. R. A. 206, 38 Am. St. R. 223) ; Hessig-Ellis Drug Co. v. Sly, 80 Kan. 60 (109 Pac. 770, Ann. Cas. 1912A, 551) ; Stein Double Cushion Tire Co. v. Fulton Co. (Tex. Civ. App.), 159 S. W. 1013. And see In re Monongahela Distilling Co., 186 Fed. 220 (6) ; Atlas Engine Works v. Parkinson, 161 Fed. 223, which followed the decision in the case of Butler Shoe Co. v. U. S. Rubber Co., supra; Mitchell Wagon Co. v. Pool, 235 Fed. 817 (4) (149 C. C. A. 129) ; Cooper Rubber Co. v. Johnson, 133 Tenn. 562 (182 S. W. 593, L. R. A. 1917A, 282). In the Cooper Rubber Co. case the court said: "The terms 'factor' and 'commission merchant' are said to be nearly or quite synonymous; the former expression being more common in the language of the law, and the latter in the language of commerce. A 'factor' is one whose business is to receive and sell goods for a commission, being entrusted with the possession of the goods to be sold, and usually selling in his own name. 1 Mechem on Agency, §§ 74, 2497, et seq. While in one sense a factor or commission merchant is the agent of the consigning dealer or manufacturer, he does not conduct the agency or business for the latter at the place of business of the former, where the sales of the consigned merchandise are made to customers chosen by the local dealer, at his own risk, and the proceeds of the sale do not become the exclusive property of the consigning company. And business so conducted is truly said to be that of the factor or commission merchant." See also Three States Buggy &c. Co. v. Kentucky (Ky.), 105 S. W. 971; Bertha Zinc &c. Co. v. Clute, 27 N. Y. Supp. 342 (7 Misc. 123) ; People v. Roberts, 25 App. Div. 13 (48 N. Y. Supp. 1028) ; Sucker State Drill Co. v. Wirtz, 17 N. D. 313 (115 N. W. 844, 18 L. R. A. (N. S.) 134) ; Dinuba Farmers Union Co. v. Anderson, 193 Mo. App. 236 (182 S. W. 1036) ; note to the case of Harrell v. Peters Cartridge Co., 44 L. R. A. (N. S.) 1094, 1095.

It is argued by learned counsel for the City of Atlanta that the evidence tended to show that the York Mfg. Co. maintains a branch office and an agency in the City of Atlanta, for the reason that its name is listed in the Atlanta city directory and in the Atlanta directory of the Southern Bell Telephone and Telegraph Company in the City of Atlanta, and that the name of the York Mfg. Co. appears upon the building in which the Southern Construction & Supply Co. operates its business. With reference to these things the president of the Southern Construction & Supply Co., Mr. George Braungart, testified as follows: " The York Mfg. Co. is a well-known manufacturer of ice-making machines and supplies, and the purpose of putting their name in the telephone book and the city directory is to identify ourselves (Southern Construction & Supply Co.) with a well-known company. We do that ourselves, for our own benefit. That is true as to the advertisement in the telephone book and in the city directory. With reference to the sign on our building, naming the York Mfg. Co., we put it there for the same purpose. As far as the York Mfg. Co. is concerned, they have never put it there or paid for them. That is done by our company for our benefit." This evidence was uncontradicted and authorized the trial judge to hold that the York Mfg. Co. did not have a place of business, and was not " doing business " in the City of Atlanta.

The plaintiff in error, through its counsel, relies upon the following, and many other similar cases, as authority for its contention that the York Mfg. Co. is " doing business " within the City of Atlanta, within the meaning of the ordinances levying the tax. After an examination of these cases we are of the opinion that they are not in point, viz.: Lange Medical Co. *v.* Brace, 186 Mich. 453 (152 N. W. 1026) ; Milburn Wagon Co. *v.* Commonwealth, 136 Ky. 330 (104 S. W. 323) ; Commonwealth *v.* Parin & Orendorff, 118 Ky. 168 (80 S. W. 791) ; Thomas Mfg. Co. *v.* Knapp, 101 Minn. 432 (112 N. W. 989) ; Wilson-Moline Buggy Co. *v.* Priebe, 123 Mo. App. 521 (100 S. W. 558) ; Neyens *v.* Worthington, 150 Mich. 580, 114 N. W. 404, 18 L. R. A. (N. S.) 142 ; International Harvester Co. *v.* Ky., 234 U. S. 579 (34 Sup. Ct. 944, 58 L. ed. 1479) ; Dalton Adding Machine Co. *v.* Va., 246 U. S. 499 (38 Sup. Ct. 361, 62 L. ed. 851) ; Ferrand Co. *v.* Walker, 169 Mo. App. 602 (155 S. W. 68). Without discussing each one of

them separately, it is sufficient to say that in these cases the facts showed that the foreign corporation had a place of business within the State where the tax was upheld, and were otherwise different, and did not bring those cases within the rule which exempted them from taxation; and such agents were not factors or commission merchants as in the case before us. In those cases the customers of the foreign corporation were the purchasers; and the facts therein being essentially different from those of the case at bar, we are of the opinion that the rulings in those cases do not apply to a case like the present.

One other character of business which the evidence shows was carried on under the contract needs to be considered; that is, where the Southern Construction & Supply Co. secures orders for machinery and apparatus in the name of the York Mfg. Co.; and as to this class of business we are of the opinion that under the evidence such business is interstate business, and not subject to taxation. In such cases the York Mfg. Co. only furnishes a person to supervise the erection of the plant. A case involving an agreement to furnish an engineer to supervise the erection and installation of a plant was under consideration by the Supreme Court of the United States, in York Mfg. Co. v. Colley, 247 U. S. 21 (38 Sup. Ct. 430, 62 L. ed. 963, 11 A. L. R. 611). That court held that the transaction involved, which is identical with some of the transactions here, constituted interstate commerce. And that being the case, such transactions are not subject to taxation by the City of Atlanta, or by any other authority except the Congress of the United States.

From the authorities cited and what has been said, we are of the opinion that the court below did not err in granting an interlocutory injunction in this case.

*Judgment affirmed. All the Justices concur, Atkinson, J., specially.*